PETTIGREW, J.
|2In this action seeking damages for injuries sustained as the result of an alleged unreasonable risk of harm created by a large water-filled hole in a sidewalk, the trial court granted the defendants’ motion for summary judgment, and denied the plaintiff’s cross motion for summary judgment, finding no genuine issues of material fact remained and that the plaintiff was unable to overcome the evidence establishing that the allegedly defective condition and circumstances that led to plaintiffs injuries were “open and obvious” such that the injury could have been avoided by a person exercising reasonable care and prudence; thus, precluding liability. The final judgment reflecting these findings was signed on December 4, 2012. This appeal by the plaintiff followed.
On April 4, 2013, during the pendency of the appeal, the Supreme Court rendered the decision of Broussard v. State, Office of State Buildings, 2012-1238 (La.4/5/13), 113 So.3d 175, which after careful review, we conclude clarified the existing and controlling law applicable to the burden of proof in a cause of action under very similar facts and circumstances. The opinion now very clearly mandates that whether an open and obvious condition is an unreasonable risk of harm, such that liability may be imposed, is not a determination of whether a duty exists (a question of law), but rather, it is a determination of whether that duty was breached, a question of fact. Given that clarification of the law, summary judgment is not proper when a genuine issue of material fact exists as to whether a duty was breached, in cases where the alleged liability arises from an open and obvious condition. Accordingly, applying the now existing interpretation and analysis mandated by the supreme court’s decision, the trial court’s judgment, granting summary judgment, must be reversed.
FACTS AND PROCEDURAL BACKGROUND
At the time of the relevant facts giving rise to this litigation, the plaintiff, sixty-nine year old Patricia M. Currie, resided in a condominium at 630-6 N. Beau Chene Drive, in Mandeville, Louisiana. The condominium was owned by Fairway Villas No. 1 Homeowners Association and insured by Scottsdale Insurance Company (defendants). Since 2002, by her own admission, Ms. Currie was aware that the sidewalk | sin front of her condominium had an uneven depression that caused water to accumulate whenever it rains.
After complaints about the condition of the sidewalk were made in 2002 to the defendants by Ms. Currie, among others, repairs were made that were originally to include the 16-foot portion of the paved walkway, including the section in front of Ms. Currie’s unit. However, in October 2004, Ms. Currie sent written notice to the manager of the condominiums, notifying him that notwithstanding the repairs, an 8-foot portion containing an uneven depression still remained, consisting of a dip the width of at least one yard in diameter directly in front of her unit and leading to her parking place, which had not been repaired properly, and continued to collect water following rain. Ms. Currie noted that the condition of the sidewalk after a rain made safe passage difficult for her to navigate from the only walkway available to get to her parking place. (The evidence *744 established that Ms. Currie’s unit also had a back door; however, she contended that after a rain, that alternative route was equally impassable, as it required her to walk through the “muddy slop” in her yard, which also accumulated water during rain, and still ultimately required her to encounter the risk of slipping and falling.)
On December 30, 2009, the date of the incident giving rise to this litigation, it rained “profusely” all day, resulting in a large accumulation of water, approximately several inches deep in the yard-long sidewalk depression in front of Ms. Currie’s unit. According to Ms. Currie, it was evening, she was wearing a floor-length dress and heeled shoes, as she was going to a New Year’s party. Notwithstanding her knowledge of the condition of the sidewalk and the potential depth of the accumulated water, Ms. Currie acknowledged that she considered the alternate route of using her back door and navigating the muddy and wet yard untenable, as she was dressed up and did not want to soil her dress and shoes in the mud. By her own acknowledgment, Ms. Currie was walking quickly because it was raining, and she made the choice to attempt to “jump” the yard-long puddle to traverse the sidewalk. Unfortunately, Ms. Currie’s attempt to traverse the sidewalk in this manner failed, she slipped and fell in the puddle, and sustained injuries, the recovery for which she instituted this action.
bin a petition for damages filed November 16, 2010, Ms. Currie alleged she had no alternative walkway or path to her vehicle in the parking lot other than traversing the 8-foot portion of the sidewalk that she knew had accumulated several inches of water. She contended that she fell and injured herself attempting to traverse the puddle and further alleged these injuries were caused by the fault of the defendants by failing to maintain the premises in a safe condition, by failing to make repairs after several notices, by failing to inspect the area and remove any hazards, and by failing to provide her with a safe living environment and walkway.
Defendants answered the petition, denying any and all responsibility for the plaintiffs injuries, and affirmatively pleading victim fault, comparative fault, contributory negligence, and the fault of the plaintiff to mitigate damages, among other defenses. They alleged the plaintiff failed to use the requisite amount of care, that she failed to see what she should have seen under the circumstances, that she failed to observe an open and obvious condition, and that she committed other acts of personal negligence or fault in her choice to attempt to jump over what she knew to be a dangerous condition.
Motions for summary judgment were filed by both the defendants and the plaintiff. Both motions were heard on May 17, 2012, during which the evidence submitted consisted of the deposition of the plaintiff, copies of correspondence between Ms. Currie and the defendant association wherein she complained of the condition of the sidewalk, as well as responses to discovery requests. The only facts revealed by this evidence that differed from what had been represented in the parties’ pleadings were: (1) that after falling, Ms. Cur-rie was able to successfully walk back through the same puddle she had failed to successfully “jump” to get back to her condominium; and (2) that Ms. Currie did have a back door to her condominium leading to an alternate route to get to her vehicle in the parking lot, albeit, it too, required her to walk through muddy water.
ACTION BY THE TRIAL COURT
As noted earlier, the trial court granted the defendants’ summary judgment, and *745 denied the plaintiffs cross motion. In so doing, the trial court noted that the condition of the sidewalk had existed for many years, and also that Ms. Currie acknowledged (and the 1 ^evidence supported) that she was very aware of the condition of the sidewalk, as well as the danger it posed by the accumulation of water after a rain. Based thereon, the trial court concluded it was “an open and obvious condition that the defendant in this case had no duty to warn of what was an apparent risk of trying to get over the condition.”
APPLICABLE LAW AND ANALYSIS
Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Lewis v. Morgan, 2011-2182, p. 3 (La.App. 1 Cir. 6/8/12), 93 So.3d 741, 743. It should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769 (per curiam). Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Lewis, 2011-2182 at 4, 93 So.3d at 744.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at | (¡trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. 966(C)(2); In re Succession of Holbrook, 2012-1655 (La.App. 1 Cir. 4/26/13), 115 So.3d 1184; Janney v. Pearce, 2009-2103, p. 5 (La.App. 1 Cir. 5/7/10), 40 So.3d 285, 288-289, writ denied, 2010-1356 (La.9/24/10), 45 So.3d 1078.
Open and Obvious Condition — Unreasonably Dangerous — Question of Law or Fact?
The trial court held that the depression in the sidewalk where water accumulated was an open and obvious condition, and granted summary judgment in favor of the defendants, apparently following a line of jurisprudence which precludes liability based on a finding that a landowner owes no duty when an allegedly defective condition exists. The plaintiff argues that the trial court erred in concluding that the sidewalk in this case was an open and obvious condition. For the following reasons, we disagree with both.
The evidence in this case, notably the plaintiffs own testimony abundantly established that Ms. Currie was not only aware *746 of the depression in the sidewalk, she was also aware that it was several inches deep and at least one yard across, and that it accumulated with water when it rained. Moreover, the fact that it created a clearly visible puddle in contrast with the rest of the walkway rendered it open and obvious even without Ms. Currie’s specific knowledge. Therefore, we do not disagree with the trial court that the sidewalk’s defective condition was open and obvious.
However, we nonetheless find that the trial court erred in rendering summary judgment based on that finding, given that the law now clearly mandates that the analysis of whether an open and obvious defect is an unreasonable risk of harm is properly a determination of fact, that takes into consideration the victim’s own comparative fault, among other factors; and, accordingly, is not proper for summary judgment.
In Broussard v. State ex rel. Office of State Buildings, 2012-1238 (La.4/5/13), 113 So.3d 175, a UPS delivery driver sustained injuries when he admittedly and 17voluntarily chose to attempt to traverse a building’s visibly misaligned elevators, while maneuvering a loaded dolly (weighing approximately three hundred pounds), by attempting to pull the dolly over a one-half to three-inch elevation caused by the elevator’s misalignment. His attempt was unsuccessful, “the inertia created by the pull caused him to lose control of the load and forcefully pushed him into the back wall of the elevator” causing him to sustain a serious back injury. The victim sued, and after a jury trial, the jury awarded him approximately one and one-half million dollars, subject to reduction by the 38 percent fault the jury assigned to the victim. Broussard, 2012-1238, at p. 2, 113 So.3d at 179.
This court, on appeal, reversed, finding the jury’s conclusion that the elevator offset created an unreasonable risk of harm because the defect was open and obvious and thus did not present a serious risk of harm, was erroneous. This court noted that the victim could have avoided his injuries by acting more reasonably under the circumstances. Broussard v. State ex rel. Office of State Buildings, 2011-0479 (La.App. 1 Or. 3/30/12), 2012 WL 1079182 (unpublished op.) That opinion based primarily on a line of jurisprudence (emerging from the circuit courts as well as the supreme court) focused on the degree to which a dangerous condition should be observed by a potential victim in determining whether a duty was owed. Id., at pp. 7-8. The supreme court granted certiorari (Broussard v. State ex rel. Office of State Buildings, 2012-1238 (La.10/26/12), 99 So.3d 50), “to further examine, under the manifest error doctrine, whether a defective condition is more properly considered an open and obvious hazard where no duty is owed, rather than an unreasonably dangerous condition where comparative fault is applicable.” Broussard, 2012-1238, at p. 1, 99 So.3d at 50. (Emphasis added.)
The supreme court’s grant of certiorari appears to have been inspired in part by its concern regarding the line of cases and the analyses employed therein that denied a victim’s recovery based on whether a defective condition should be obvious to the victim, which runs perilously close to resurrecting the doctrine of assumption of risk. Broussard, 2011-0479 at p. 7.
|sNow, the following dictates from the supreme court in the Broussard opinion guide us in the analysis of the issue raised herein:
In order to avoid further overlap between the jury’s role as fact-finder and the judge’s role as lawgiver, we find the analytic framework for evaluating an un *747 reasonable risk of harm is properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed ab initio. It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact. The judge decides the former, and the fact-finder — judge or jury — decides the latter.
Broussard, 2012-1288 at p. 12, 99 So.3d at 50 (citations omitted.)
Because the determination of whether a defect is unreasonably dangerous necessarily involves a myriad of factual considerations, varying from case to case, the cost-benefit analysis employed by the fact-finder in making this determination is more properly associated with the breach, rather than the duty, element of our duty-risk analysis.
Id. (citations omitted.)
Thus, while a defendant only has a duty to protect against unreasonable risks that are not obvious or apparent, the fact-finder, employing a risk-utility balancing test, determines which risks are unreasonable and whether those risks pose an open and obvious hazard. In other words, the fact-finder determines whether defendant has breached a duty to keep its property in a reasonably safe condition by failing to discover, obviate, or warn of a defect that presents an unreasonable risk of harm.
Broussard, 2012-1238 at p. 13, 99 So.3d at 50.
Because the determination of whether a defective thing presents an unreasonable risk of harm “encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court.”
Id. (citations omitted.)
Reversing this court, the supreme court in Broussard reinstated the jury’s verdict, which awarded damages to the UPS driver plaintiff notwithstanding that it also assessed him with 38 percent fault. Pursuant to the foregoing dictates, it is inescapable that in this matter, summary judgment is no longer proper. The issue of whether the 19depression in the sidewalk in this case was an open and obvious condition, such that liability may attach to the landowner if the condition presented an unreasonable risk of harm, and whether, indeed, the condition presented an unreasonable risk of harm, under the particular facts and circumstances of this case, are all genuine issues of material fact remaining and properly determined by the trier of fact employing a duty risk analysis. And, again, guided by the supreme court’s Broussard opinion, this determination will include inquiry regarding the social utility of the sidewalk at issue, the likelihood and magnitude of harm, including whether it was an open and obvious condition, the cost of preventing the harm, and the nature of the plaintiffs activity, including any comparative fault that may attach to the plaintiffs conduct.
CONCLUSION
Accordingly, the judgment of the trial court, granting summary judgment in favor of Scottsdale Indemnity Company and Fairway Villas No. 1 Homeowners Association, Inc. and dismissing the claims of Patricia M. Currie against them, is hereby reversed. The matter is further hereby remanded to the trial court for further proceedings consistent herewith. Costs of this appeal are assessed to the defendants.
REVERSED AND REMANDED.
McDONALD, J., concurs with reasons.