CRAIN, J.
[pThe plaintiff appeals a summary judgment that dismissed her claims seeking recovery for injuries she sustained when she tripped and fell on a broken section of sidewalk. We affirm.
FACTS
The sidewalk involved in this accident is located in a multi-street residential neighborhood in Baton Rouge. The accident occurred on a section of sidewalk along Upton Drive in front of a residence owned by Julie Morgan. The sidewalk crosses Morgan’s concrete driveway for a distance of twelve feet. As shown in the photographs below, this section of sidewalk contains numerous areas where the concrete has shifted and fractured, resulting in cracks and crevices. that extend the full depth of the sidewalk and, in some areas, expose the underlying ground.
[[Image here]]
[[Image here]]
Although the sidewalk has deteriorated over time, it was initially damaged between 1995 and 2002, prior to Morgan acquiring the property, when heavy equipment was moved onto the property. The equipment included a crane used to remove a tree that fell on the house and cement trucks, that were driven onto the *73 property during repair work to the rear of the house. Pine trees located next to the |^driveway also.caused damage to the sidewalk during that same period of time. After Morgan purchased the property in 2005, the condition of the sidewalk remained basically the same for six years leading up to the subject accident on February 16, 2011.
On the day of the accident, Eva Temple, who was 81 years old, and her husband took a mid-afternoon walk that eventually led them to Upton Drive. Although she had lived in the neighborhood for over forty years, this was the first time she had walked on the sidewalk along Upton Drive. After her husband stopped to speak to a neighbor, Temple continued her walk and came to the broken section of sidewalk at Morgan’s driveway. The sidewalk is straight as it approaches that area, and Temple had an unobstructed view of the broken section. She did not notice any of the cracks in the sidewalk until she stepped into a “hole,” the term she used to describe the area where the underlying ground was visible. Temple lost her balance, fell, and fractured her left wrist.
Temple filed suit against Morgan and the City of Eaton Rouge/Parish of .East Baton Rouge . (City/Parish), alleging -that the sidewalk was defective and dangerous, and that the defendants knew or were in a position to know of the defective condition, negligently failed to maintain the sidewalk in a safe and reasonable manner, and failed to establish a policy for routine repair and maintenance of the sidewalks.[1] The City/Parish filed an answer denying liability and, after conducting discovery, filed a motion for ■ summary-' judgment seeking dismissal of- all claims against it. The City/Parish argued that the condition of the sidewalk was open and obvious and that Temple had an unobstructed view of the Udamaged .area. ■ The City/Parish further asserted that neither Morgan nor the two previous owners of the property, who cumulatively held title back to the date of the original damage, had ever notified the City/Parish of the sidewalk damage.
In support of the motion, the City/Parish offered numerous exhibits, including photographs of the sidewalk, a map of the neighborhood,:and the depositions of Temple; Morgan; David Guillory, the current Director of Public Works for the City/Parish; and Micah Holden, the previous owner of Morgan’s ■ property from 2002 through 2005. The photographs, which include the two pictures reproduced above, show the broken section of sidewalk adjacent to Morgan’s driveway where Temple fell. The City/Parish also, introduced a survey of the sidewalk and driveway that shows a change in elevation of up to four inches between the high and low points of the damaged section.
The evidence established that Temple was walking during daylight hours- on a clear -day.- Temple- testified - that' it was still light outside during her walk and described the day as- “beautiful,” adding that it “was }n- February [when you] have a lot of light _until. 8:30 or 8:00.” Morgan similarly stated that the weather was “sunny” at the time of the accident.
• In the following exchanges in her deposition, Temple described her observations *74 as she approached the broken section of sidewalk: ■
Q. So as you’re walking towards this area where the sidewalk crosses her driveway, had you noticed that there were cracks or anything in the sidewalk?
A. No, not until I got right on the sidewalk and my foot got caught in that hole.
* # *
Q. Was there anything preventing you from seeing that sidewalk across her driveway? : -
A. Nothing was preventing me from seeing it. I was just walking, enjoying my walk and looking, you know. You have to see what’s on | Bthe front of you and the side of you when you walk. You just don’t look down all the time.
[[Image here]]
Q. As’you’re walking down the sidewalk heading toward her' house, her house being on the right side, where were you looking?
A. At that particular time?
Q. Yes.
A. Just enjoying my walk. I don’t know. I can’t say exactly where I was looking, you .know. I certainly wasn’t looking down because if I would have been, I would have seen the hole. ■
When shown a photograph of the sidewalk and asked to identify the location of the “hole,” Temple pointed to a “general area” where the ground was visible between the separated concrete. Pointing to various places in the photograph, Temple stated, “I could have tripped here, I could’ve tripped there, or I even could have tripped there.”
Morgan testified in her deposition that, on the day of her deposition, the damaged area of the sidewalk was basically the same as when she bought her property in 2005, opining that over that period of time the area had become “[mjaybe ten percent” worse. Morgan said she often works outside in her yard and has watched people walk and jog by the area on a daily basis, but has never seen anyone fall. Morgan’s neighbors never complainéd to her about the condition of the sidewalk.
Prior to the subject accident, Morgan never notified the City/Parish about the condition of the sidewalk. Although she filed a service request with the City/Parish after this accident, Morgan testified that that was done only at the urging of Temple. In the service request, Morgan described the sidewalk as severely “cracked/buckled” and stated that it was “highly” used on a daily basis for “walking, running, strolling, etc.” She recalled Temple’s accident, and added, that |fi“[m]others have issues when strolling babies” and that the situation presents a “hazard.” Morgan reviewed the service request at her deposition and, when asked if she had ever seen anyone have trouble traversing this area, answered:
No, No. They just walk around it or push their strollers over. They’re just careful. It’s — it’s so obvious that it’s there, everyone • just either stops — in fact, the little boy next door, rides his bike over it for fun. No, it doesn’t deter anyone from moving and — even old people walk down, and they just walk around it. Joggers walk around it or jog across it.
Holden, the owner of the property prior to Morgan, testified that the sidewalk was already damaged when he purchased the property in 2002. He never lived in the house prior to selling it in 2005, but remembered that the sidewalk was “messed up,” contained cracks, and generally “wasn’t in good shape.” Ño one ever complained to Holden about the sidewalk, and *75 he was not aware of any accidents occurring on it.
The City/Parish submitted an affidavit signed by Jerome, the owner of the property prior to Holden, who attested that he owned the property from 1995 to 2002. Jerome confirmed that the sidewalk was damaged while he owned the property when a crane was brought in to remove a tree that fell on the house and when cement trucks drove over it during construction work at the house. Pine trees next to the driveway caused additional damage to the driveway and sidewalk. When Jerome sold the property to Holden, the sidewalk was damaged, but not as badly as it was in 2013 when Jerome signed his affidavit.
Guillory; the Assistant Public Works Director of Maintenance at the time of Temple’s accident, was responsible for supervising the maintenance of public streets and sidewalks. He testified that superintendents patrol their respective areas and will address hazards, but . that' the City/Parish only repairs sidewalks damaged by its own workers. Otherwise, in residential areas, the City/Parish’s policy is that sidewalk repairs are the responsibility of the homeowner. Guillory introduced and 17referenced a City/Parish ordinance which provided that owners of lots fronting on streets having paved sidewalks are obligated to repair the sidewalk in front of their lot.
When shown photographs of the damaged sidewalk, Guillory testified that he would not expect a superintendent to report that damage because it did not appear to have been caused by a City/Parish worker. Guillory further confirmed that in response, to the service request filed by Morgan after Temple’s ■ accident, the City/Parish investigated the damage to the sidewalk and determined that it was the homeowners responsibility. Guillory reviewed the survey of the damaged sidewalk and acknowledged that it revealed a difference in elevation of about four inches between the highest and lowest points.
In opposition to the motion, Temple offered many of the same exhibit's, including the depositions of Temple and Guillory, photographs of the sidewalk, and' the service request filed by Morgan after the accident. To prove that the City/Parish had notice of the 'damaged sidewalk, Temple submitted prior service requests showing that in 2005 and 2007 the City/Parish repaired sewer lines under or near the sidewalk on the lots immediately adjacent to both sides of Morgan’s property. Temple also introduced a letter from a safety-consultant who reviewed photographs, depositions; ' and related documents and opined that the City/Parish failed to establish a system of minimum inspection and maintenance of public sidewalks, failed to establish reasonable thresholds for the repair of sidewalks, and failed to exercise its power to require private property owners to repair sidewalks.
After hearing the motion and taking the matter under advisement, the trial court ruled in favor of the City/Párish, stating:
The court finds that there is, no genuine issue of material fact that the condition plaintiff alleges caused her fall was open and obvious to all and the defendant has no lawful duty to protect the plaintiff from conditions that present obvious hazards. Furthermore, |sthe law does not impose upon the defendant the duty to perform periodic inspections of the sidewalks within its custody and control, and the plaintiff has failed to show that the defendant had either actual or constructive knowledge of the hazardous condition (crumbled sidewalk).
A judgment was signed on March 2, 2015, that granted the motion for summary judgment and dismissed Temple’s claims with prejudice. Temple appeals and as *76 signs as error the trial court’s finding (1) that the condition that caused her fall was open and obvious to all and that the City/Parish had no lawful duty to protect Temple from conditions that present obvious hazards, (2). the City/Parish had no duty to periodically inspect the sidewalks within its custody and control, and (3) that Temple failed to prove that the City/Parish had actual or constructive knowledge of the hazardous, condition.[2]
DISCUSSION
A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, ,jf any, admitted for purposes of . the motion for summary judgment, show that there is no genuine issue ,as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ, Pro. art. 966 B(2).[3] The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. See La.Code Civ. Pro. art. 966 A(2). In determining whether summary judgment is appropriate, appellate courts |flreview evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La.App. 1 Cir. 6/6/14), 147 So.3d 763, 759-60.
The burden of proof is on the mover. See La.Code Civ. Pro. art. 966 C(2), However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover’s burden does not. require that all essential elements of the adverse party’s claim, action, or defense be negated. .Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La.Code Civ. Pro. art. 966 C(2); Cason v. Saniford, 13-1825 (La.App. 1 Cir. 6/6/14), 148 So.3d 8, 11, writ denied, 14-1431 (La.10/24/14), 151 So.3d 602,
. In order to prove a public entity, is liable for damages caused by a defect in a sidewalk, the plaintiff must establish: (1) custody or ownership of the sidewalk by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation. See La. Civ.Code arts. 2317 and 2317.1; La. R.S, 9:2800; Chambers v. Village of Moreauville, 11-898 (La.1/24/12), 85 So.3d 593, 597. Tem- *77 pie’s initial assignment of error questions the trial court’s finding with respect to the second of these requirements, namely that the defect in the sidewalk did not present an unreasonable risk of harm because it was open and obvious.
hnThere is no fixed rule for determining whether a defect' in a sidewalk is unreasonably dangerous. Instead, a risk-utility balancing test is used to determine whether the defect creates an unreasonable risk of harm. See Chambers, 85 So.3d at 598. This test considers four pertinent factors: (1) the utility of the complained of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs activities in terms of its social utility or whether it is dangerous by nature. Broussard v. State ex rel. Office of State Buildings, 12-1238 (La.4/5/13), 113 So.3d 175, 184.
The second prong of this inquiry focuses on whether the allegedly dangerous or defective condition was obvious and apparent. Under Louisiana law, a defendant generally does not have a duty to protect against that which is obvious and apparent. Bufkin v. Felipe’s Louisiana, LLC, 14-0288 (La.10/15/14), 171 So.3d 851, 856; Broussard, 113 So.3d at 184; Dauzat v. Curnest Guillot Logging Inc., 08-0528 (La.12/2/08), 995 So.2d 1184, 1186. For an alleged hazard to be considered obvious and apparent, our supreme court has consistently stated that the hazard should be one that is open and obvious to.everyone who may potentially encounter it. See Bufkin, 171 So.3d at 856; Broussard, 113 So.3d at 184, 192; Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585, 591. The open and obvious inquiry thus focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim’s actual or potentially ascertainable knowledge. Broussard, 113 So.3d at 188,
In this case, the trial court determined the “open and obvious” issue by summary judgment. The appropriateness of the summary judgment procedure for this determination was called into question by certain statements made by our supreme court in Broussard. The issue in Brous-sard was whether a jury erred in | nconcluding that a misaligned elevator presented an unreasonable risk- of harm. Broussard, 113 So.3d at 178-79. In deciding that the jury’s finding should be reviewed under the manifest error standard of review, the supreme court stated that the unreasonable risk of harm determination -is “a matter wed to the facts” and is “properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed ab initio. ” Broussard, 113 So.3d at 183, 185. The court then observed, “It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact,” Broussard, 113 So.3d at 185.
Although Broussard did not involve the review of a summary judgment, the court’s pronouncement that the unreasonable risk of harm determination was a factual question reserved for the jury was construed as precluding a summary judgment on the issue, specifically the question of whether a defect was open and obvious. See Kennett v. Department of Public Works ex rel. City of Bogalusa, 13-0824, 2013 WL 6858283, p. 10 (La.App. 1 Cir. 12/27/13); Graupmann v. Nunamaker Family Ltd. Partnership, 13-0580 (La.App. 1 Cir. 12/16/13), 136 So.3d 863, 870; Currie v. Scottsdale Indemnity Company, 12-1666 (La.App. 1 Cir. 8/26/13), 123 So.3d 742, 746-47.
*78 The supreme court soon clarified the matter in a series of opinions, beginning with Buflcin, wherein the court granted a summary judgment finding that any risk presented by the location of a garbage dumpster was open and obvious; and, therefore, its owner owed no duty to a pedestrian who was struck by a bicyclist while crossing the street near the dumpster. Bufkin, 171 So.3d at 856-58. In so holding, the supreme court directed:
We note that our opinion in Broussard v. State ex rel. Office of State Buildings, supra, should not be construed as precluding summary judgment when no legal duty is owed because the condition | ^encountered is obvious and apparent to all and not unreasonably dangerous.
Bufkin, 171 So.3d at 859, n. 3.
Bufkin was soon followed by three more supreme court decisions granting summary judgments where the alleged defects were open and obvious. See Rodriguez v. Dolgencorp, LLC, 14-1725 (La.11/14/14), 152 So.3d 871, 872 (per curiam) (shopping cart that patron tripped over was open and obvious); Allen v. Lockwood, 14-1724 (La.2/13/15), 156 So.3d 650, 653 (per curiam ) (unpaved grassy parking area where accident occurred was open and obvious); Ludlow v. Crescent City Connection Marine Division, 15-1808 (La.11/16/15), 184 So.3d 21 (per curiam) (any danger presented by a concrete barrier on a vehicle ramp was “obvious and apparent to anyone who might potentially encounter it”).[4]
In Allen, the supreme court explained the context and limitations of its statements in Broussard as follows:
Notably, Broussard was a three-day jury trial involving a fact-intensive determination as to whether the defect posed an unreasonable risk of harm or constituted an open and obvious defect. The jury returned a verdict in favor of Broussard. The First Circuit Court of Appeal reversed on grounds of manifest error because it found the defect was open and obvious. This Court reversed finding no manifest error in the jury’s determination. We resolved the issue under the risk-utility balancing test. Our comments under this discussion clearly pertained to cases that were tried either by judge or jury. Broussard did not involve summary judgment practice nor did our discussion infer that issues of this nature must be determined by a trial. Any reading of Broussard interpreting it as a limit on summary judgment practice involving issues of unreasonable risk of harm is a misinterpretation of the Broussard case.
[[Image here]]
As Bufkin demonstrated, “our jurisprudence does not preclude the granting of a motion for summary judgment in cases where the plaintiff is unable to produce factual support for his or her claim that a complained-of.condition or things is unreasonably dangerous.”
Allen, 156 So.3d 650, 652-53 (quoting Bufkin, 171 So.3d at 859 (Guidry, J., concurring)).
We interpret these clarifications by the supreme court as having resolved the questions that arose in the wake of Broussard. In the absence of 'any material issues of fact, a court may determine by summary judgment that a defect is open and obvious and, therefore, does not present an unreasonable risk of harm.
The evidence presented by the City/Parish established that Temple’s accident occurred during an afternoon walk on- *79 a sunny day. Temple was walking on a straight stretch of sidewalk with an unobstructed view as she approached the section of sidewalk adjacent to Morgan’s driveway. As shown in the photographs, that section of sidewalk contains a multi-tudé of cracks, depressions, and protrusions. The photographs further confirm that these defects must be plainly visible to anyone walking on the sidewalk during daylight hours, particularly on a sunny day. Even Temple acknowledged that “[n]othing was preventing me from seeing it.”
Another factor relevant to the risk of harm in a sidewalk case is the number of years the defect has existed Relative to the pedestrian traffic and the number of incidents reported. See Chambers, 85 So.3d at 599; Williams v. Leonard Chabert Medical Center, 98-1029 (La.App. 1 Cir. 9/26/99), 744 So.2d 206, 210, writ denied, 00-0011 (La.2/18/00), 754 So.2d 974. The City/Parish’s evidence established that the sidewalk damage originated approximately ten or more years prior to Temple’s accident, and the severity of damage changed very little ¡during the six years preceding the accident. These facts were unchallenged by Temple. Morgan testified that the sidewalk was used daily. Yet, neither Morgan nor Holden, the previous owner, were aware of any other accidents at this location. •
| uThe City/Parish’s evidence was sufficient to shift the burden of proof to Temple to come forward with evidence to demonstrate that she would be able to meet her burden of proof at trial. See La.Code Civ. Pro. art. 966 C(2); Allen, 156 So.3d at 653. Temple failed to produce evidence disputing the open and obvious nature of the defects in the sidewalk. In her deposition, Temple acknowledged that her view was unobstructed and that she was uncertain where she was looking as she approached the damaged section of sidewalk, conceding that if she had looked down, “I would have seen the hole.” She offered no evidence of prior ■ accidents at. the site.
Temple contends that her lack of familiarity with the sidewalk precludes a summary judgment as to whether the defect was open and obvious, citing Soni v. L.J. Martrain Family, LLC, 13-1619, 2014 WL 1165897 (La.App. 1 Cir. 3/21/14). Soni is factually distinguishable. The plaintiff in Soni was walking on a sidewalk in the dark when she fell in a hole. Soni, 2014 WL 1165897 at p. 1. The trial court granted summary judgment to one of the defendants based on a finding that the defendant did not have custody or control over the area. Soni, 2014 WL 1165897 at p. 5. On appeal, after concluding that the trial court erred in that finding, this court rejected the defendant’s alternative contention that the hole was open and obvious, explaining, “Plaintiffs evidence showed she was not familiar with the area, it was dark at the time she fell, there was no lighting illumjnating the sidewalk, and that two other persons, who were walking along side her that night, did not see the hole until she fell in - it.” Soni, 2014 WL 1165897 at p. 5. In contrast, Temple was walking during daylight hours on a sunny day and had an unobstructed view of the sidewalk ahead of her. No evidence was produced suggesting thát other pedestrians had approached the same area of the sidewalk and failed to notice the damaged section. In fact, evidence was produced by the City/Parish' establishing |1Bthat the sidewalk was traversed on a daily basis by walkers and joggers, without incident.
Temple also cites testimony from Guillo-ry and suggests that Guillory admitted that the sidewalk was unreasonably dangerous; however, in the testimony relied upon by Temple, Guillory stated only that’ “[s]omeone could trip in a hole, yes.” No *80 one disputes that the sidewalk was broken and that Temple fell. But, the accident, alone, does not support the imposition of liability, particularly considering the normal hazards pedestrians face while traversing sidewalks and parking lots in this state. Williams, 744 So.2d at 211.
Temple attempts to distinguish the defects in the sidewalk by implying that some were obvious and some were not, and by claiming, that she “saw the cracked concrete,- but she did not see the hole in the-sidewalk until her foot was in it.” As to the first part of this statement, Temple testified unequivocally that she did not see the cracks in the sidewalk until she stumbled. When pressed to identify which crack caused her to stumble, Temple was unable to definitively do so. There is no evidence in the record to support Temple’s attempt to distinguish the defects in the sidewalk.
The record establishes that Temple encountered a section of sidewalk that was replete with cracks, depressions, and protrusions, a condition that , must have been visible under the circumstances, and that she fell while attempting, to traverse the area. Similar facts were presented in Dickson v. City of Shreveport, 47,268 (La.App. 2 Cir. 8/8/12), 104 So.3d 9, writ denied, 12-2284 (La.11/30/12), 103 So.3d 375, where the plaintiff (“Deborah”) was Walking on a sidewalk when she tripped and fell on a section that crossed a driveway leading into a parking garage. Dickson, 104 So.3d at 10. In the ensuing litigation, the City of Shreveport filed a motion for summary judgment arguing that thes condition of the sidewalk was open |1(iand obvious. Dickson, 104 So.3d at 10.[5] The court of appeal reversed the trial court and granted summary judgment, explaining:
The photographs depict an area of the sidewalk -with numerous cracks. The cracked area appears to extend all across the sidewalk. It is indisputable that the cracked condition of the concrete sidewalk was open and obvious and that nothing was obstructing Deborah’s view of its condition. Deborah did not state in her deposition that the condition of the sidewalk was not noticeable. Instead, she admitted that she was not looking down as she walked. She stated she was looking ahead toward a signal light and looking out for any vehicles turning into the parking lot. She also candidly admitted that if she had been looking at,, the sidewalk, she would not have fallen. ,
-⅜ * *
The uñdisputéd facts here established ... that the condition of the sidewalk was open and obvious and should have been seen by Deborah had she paid even cursory attention to the pathway ahead of her. Deborah was not distracted by anything particular, such as a honking vehicle ... or even a vehicle turning into the parking lot. Instead, she was, as stated in her depositions, “looking at everything but the ground.” ,
Dickson, 104 So.3d at 14.
The Dickson court also noted that, as in the present case, the plaintiff was uncertain exactly whiph crack in the sidewalk caused her fall,, and that despite the lengthy existence of the defect in a busy downtown area, no evidence was presented indicating any-other falls.at that location. Dickson, 104 So.3d at 15.
A pedestrian has a duty to see what should be seen 'and is bound to ob *81 serve his course to see if his pathway is clear. Bufkin, 171 So.3d at 855. Public entities are not liable for every irregularity in a street or sidewalk. See Reagan v. Recreation and Park Commission for Parish of East Baton Rouge, 15-1662 (La.12/4/15), 184 So.3d 668 (per curiam); Chambers, 85 So.3d at 598-99; Boyle v. Board of Supervisors, Louisiana State University, 96-1158 (La.1/14/97), 685 So.2d 1080, 1082. As recognized by this court in Williams:
_Jjj[W]e do not live in a perfect world. We cannot impose a duty on a landowner to have perfectly flawless premises. Sidewalks and parking lots are not always level, and individuals must assume some responsibility for their own safety. Everyday life presents risks which must be encountered and negotiated.
Williams, 744 So.2d at 211.
The trial court did not err in finding no material issue of fact as to the open and obvious nature of the condition of the sidewalk. . Consequently, the sidewalk did not present an unreasonable risk of injury. See Williams, 744 So.2d at 211 (reversing the trial court’s judgment in favor of the plaintiff because expansion joint in sidewalk was open and obvious); Dickson, 104 So.3d at 14-15; Stevens v. City of Shreveport, 49,437 (La.App. 2 Cir. 11/19/14), 152 So.3d 1071, 1078, writ denied, 15-0197 (La.4/17/15), 168 So.3d 399, cert. denied, — U.S. —, 136 S.Ct.154, 193 L.Ed.2d 114 (2015) (missing section of sidewalk did not present an unreasonable risk of harm to bicyclist who admitted that accident occurred on a clear, sunny day).
In her remaining assignments of error, Temple contends the trial court .erred in finding that the City/Parish - did not have constructive notice. of the sidewalk condition, and erred in finding that the City/Parish had no duty to perform periodic inspections of the sidewalks , within its custody and control. We need not determine these issues because we find that .the sidewalk did not present an unreasonable risk of harm. See Boyle, 685 So.2d at 1084; Williams, 744 So.2d at 209. Accordingly, we pretermit consideration of the final two assignments of error.[6]
1 ^CONCLUSION
We affirm the March 2, 2015 summary judgment dismissing all claims against the City of Baton R'oúge/Parish of East Baton Rouge. Costs of this appeal are assessed to Eva Temple.
AFFIRMED.
PETTIGREW, J., dissents, and assigns reasons.

. Temple also sued William Daniel, the director of the Department of Public Works for the City/Parish, and unnamed insurers for Morgan and the City/Parish. The claims against Daniel were dismissed by the trial court on an exception of no cause of action. State Farm Fire and Casualty Company filed responsive pleadings on behalf of itself and Morgan. Temple’s claims against Morgan and State Farm were dismissed by a separate summary judgment that is not the subject of this appeal.

. This court, ex proprio motu, issued a rule to ■show cause on July 31, 2015, stating that the record did not contain a signed judgment and to the extent the trial court’s ruling purported to be a judgment, it lacked appropriate decre-tal language dismissing Temple’s claims. The record was then supplemented to include the March 2, 2015 judgment This court maintained the appeal, noting, however, that a final determination on maintaining the appeal was reserved for this panel. We maintain the appeal.

. Louisiana Code of Civil Procedure article 966 was amended and reenacted by Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act; therefore, we refer to the former version of the article in this case. See Acts 2015, No. 422, §§ 2 and 3.

. For additional facts in Ludlow, see the lower court opinion at Ludlow v. Crescent City Connection Marine Division, 14-1359, 2015 WL 5609999 (La.App. 4 Cir. 9/23/15).

. -Though the opinion does not indicate the time of day, it appears likely that the accident occurred in the morning because the plaintiff was reporting for jury duly, See Dickson, 104 So.3d at 15.

. We further note that to the extent Temple asserts any negligence claims against the City/Parish for the failure to repair the sidewalk, under either theory of recovery, negligence or strict liability, Temple had the burden of proving a condition that created an unreasonable risk of harm. See Graupmann, 136 So.3d at 867-68; Williams, 744 So.2d at 209.