CHUTZ, J.
| aPlaintiff-appellant, John Williams, appeals the trial court’s grant of summary judgment, dismissing his claims for damages against defendant-appellee, the Tan-gipahoa Parish School Board (TPSB), as a result of injuries he sustained after he fell on the premises of Kentwood Magnet High School (Kentwood High).[1] We affirm.
*413 FACTUAL AND PROCEDURAL BACKGROUND
Williams filed a petition for damages alleging that he had been an invited guest at Kentwood High and sustained injuries when he fell on “a hazardous and dangerous condition.” He averred that as a result of the hazardous and dangerous condition, he was entitled to damages from TPSB who he alleged is the actual custodian of the high school.[2]
After answering the lawsuit, TPSB filed a motion for summary judgment, urging it was entitled to dismissal because Williams could not show an unreasonable risk of harm existed at Kentwood High. The trial court agreed and granted summary judgment.[3] This devolutive appeal by Williams followed.
DISCUSSION
A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, |ashow that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B(2).[4] In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Temple v. Morgan, 2015-1159 (La.App. 1st Cir. 6/3/16), 196 So.3d 71, 767, writ denied, 2016-1255 (La. 10/28/16), 208 So.3d 889.
The burden of proof is on the mover. See La. C.C.P. art. 966C(2). But if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover’s burden does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966C(2); Temple, 196 So.3d at 76.
It is undisputed in this case that TPSB is a public entity. See La. R.S. 9:2800G(1) (including political subdivisions within the *414 definition of a public entity); see also La. Const. art. VI, § 44(2) (a political subdivision means a parish, municipality, and any other unit of local government, including a school board, authorized by law to perform governmental functions). A public entity is responsible under La. C.C. art. 2317 for damages caused by the condition of buildings within its care and custody. La. R.S. 9:2800A.
14According to Article 2317:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
Vicarious responsibility under Article 2317 extends to the things which we have in our custody, including buildings. See William E. Crawford, 12 La. Civ. L. Treatise, Tort Law § 9:2 (2d ed.).
La. C.C. art. 2322 sets forth vicarious responsibility which may attach for damage caused by the ruin of a building, providing in pertinent part:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Under Article 2322, to hold the custodian of a building liable for damages caused by the building’s ruin or a defective component, a plaintiff must prove (1) ownership or custody of the building; (2) the owner/custodian knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation. See Broussard v. State ex rel. Office of State Bldgs., 2012-1238 (La. 4/5/13), 113 So.3d 175, 182-83. Additionally, our jurisprudence requires that the ruinous building or its defective component part create an unreasonable risk of harm. Id., 113 So.3d at 183 (citing Entrevia v. Hood, 427 So.2d 1146, 1148-49 (La. 1983)).[5]
|fiThe custodian of a building is not responsible for all injuries resulting from any risk posed by the building. Rather, the custodian is only responsible for those injuries caused by a ruinous condition or defective component part that presents an unreasonable risk of harm to others. See Broussard, 113 So.3d at 183.
Although the precise phrase “unreasonable risk of harm” does not appear in the statutes governing premises liability, see Nugent v. Car Town of Monroe, Inc., 50,910 (La.App. 2d Cir. 9/28/16), 206 So.3d 369, 374, to aid the trier-of-fact in *415 making the unscientific, factual determination of whether a condition presents an unreasonable risk of harm, our courts have consistently given consideration to the risk-utility balancing test by which the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair. Specifically, the courts have synthesized the risk-utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition, (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition, (3) the cost of preventing the harm, and (4) the nature of the plaintiffs activities in terms of its social utility or whether it is dangerous by nature. See Broussard, 113 So.3d at 184. The finding of an unreasonable risk of harm is “wed to the facts,” “context-specific,” and to be determined on the facts and circumstances of the particular case. Nugent, 206 So.3d at 375. The absence of prior complaints or incidents is a valid consideration in assessing whether a given condition poses an unreasonable risk of harm. Id. (citing Chambers v. Village of Moreauville, 2011-898 (La. 1/24/12), 85 So.3d 593).
The mere fact an accident occurred because of some vice or defect does not elevate the condition of the thing to that of an unreasonably dangerous defect. | (¡Compliance with building codes is only one factor to consider in determining a building custodian’s liability. Buildings that predate the promulgation of building codes are “grandfathered in,” meaning that existing structures not in compliance with new codes are not required to comply with the new codes, unless there is a major renovation. Nugent, 206 So.3d at 376. In the analogous field of zoning, many municipalities allow the continued use of nonconforming structures, to avoid constitutional issues and unfairness to the owner. Nugent, 206 So.3d at 376 (citing Redfearn v. Creppel, 455 So.2d 1356 (La. 1984)).
In this case, Williams alleged he sustained injuries when he fell in a hole at the entrance of Kentwood High. In support of its motion for summary judgment, TPSB introduced the affidavits of Rochell Bates, the Kentwood High principal, and LaVar James, a director of the Department of Transportation and Risk Management. These TPSB employees attested that neither had received any reports of problems or injuries with the area leading to the school’s gymnasium. Bates has been employed at Kentwood High since 1994, and LaVar has been working as a director since 2010.
TPSB also placed into evidence the deposition testimony of Terrell Hookfin, whom the parties agreed is a coach at Kentwood High. According to Hookfin, the entrance area to the gym has been in substantially the same condition since he attended high school there. He stated that the entrance was used by people, including parents, teachers, students, and coaches, and that he used it daily. Hookfin had never been told by anyone that the entrance, which was a means of both entry and exit, was a problem. He did not think the entrance created a safety risk, noting that if it did, he would not want his son using it. Hookfin indicated that the entrance had been built with the hole outside of the door and that the hole was obviously used for drainage.
|7A1so admitted into evidence was the affidavit of Dean M. Duplantier, a registered professional architect who previously has been qualified in district court as an expert in architecture, design, and construction. He stated that the original construction of the building was around 1931 and, therefore, predated the adoption of any recognized building design and con *416 struction standards in the State. According to Duplantier, at the time the building was constructed, it was of quality construction and reflected the inherent design standards and detailing of the period. He identified two minor renovation projections on the building, which cost TPSB a total of $320,708.00, and stated that neither involved any work related to the entrance into the gym where Williams was believed to have fallen. That the gym’s entrance has been in substantially the same condition and configuration for 80 years before Williams was injured evinced that thousands of people had used the entrance without incident according to Duplantier. Therefore, he opined that the original side entryway into the Kentwood High gym provided a safe means of ingress and egress, which should not have impacted Williams’ ability to enter the gym if he had been cognizant of the built environment upon which he traversed.
With this showing, TPSB established an absence of prior complaints and that the Kentwood High building predated the promulgation of building codes was, therefore, “grandfathered in” and not required to comply with new building codes absent a major renovation. Thus, TPSB successfully pointed out an absence of factual support for a finding that the entrance created an unreasonable risk of harm. The burden then shifted to Williams to produce factual evidence sufficient to establish that he- will be able to satisfy his evidentiary burden of proving his allegation that the “hazardous and dangerous condition” at Kentwood High in which he fell created an unreasonable risk of harm.
In his opposition to summary judgment, Williams asserted that he “was attempting to enter [Kenwood High’s gym] to pick up his grandson when he fell in|sa hole immediately outside the entrance.” To support this contention, Williams offered the affidavit of Ladd Ehlinger,. a registered professional architect who has previously been qualified in numerous district courts in Louisiana, Alabama, and Arkansas as an expert in trip and fall accident analysis. Ehlinger identified several deficiencies which, he opined, constituted defects that presented unreasonable risks of harm because they violated the Life Safety Code, NFPA 101, and the Standard Building Code.[6] Ehlinger expressly noted that the defects he outlined were caused by the original design and construction of the building and suggested that TPSB had failed to maintain the Kentwood High property. Importantly for purposes of this summary judgment, none of the deficiencies to which Ehlinger pointed were related to the hole in which Williams maintained he fell, and Ehlinger did not relate the deficiencies to the presence of the hole or to Williams’ inability to traverse the area without encountering the hole.
Williams also submitted excerpts of Ho-okfin’s deposition testimony in which the coach testified that he hoped the school would be remodeled so it would be in better shape. But Hookfin indicated that he thought the remodeling was needed because it was an old design, not because it had deteriorated to the point that it was a safety concern.
Williams offered nothing to rebut the showing that in the 80 years the Kentwood High gym entrance has been used at the *417 school no one has ever reported a complaint, problem, or prior accident. And because TPSB showed that the Kentwood High building, and the entrance in particular, were part of the original design and construction which predated the adoption of building standards, Williams’ responsive showing that certain deficiencies existed due to TPSB’s ^failure to comply with building codes is insufficient to create a material issue of fact to present to the trier of fact. Mindful of the dearth of evidence establishing that the hole into which he fell created an unreasonable risk of harm, Williams has not produced factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proving the gym’s entrance presented an unreasonable risk of harm, the trial court correctly granted summary judgment in favor of TPSB.[7]
DECREE
For these reasons, the trial court’s judgment granting summary judgment in favor of and dismissing defendant-appellee, the Tangipahoa Parish School Board, from this litigation is affirmed. Appeal costs are assessed against plaintiff-appellant, John Williams.
APPEAL MAINTAINED; JUDGMENT AFFIRMED

. Kentwood Magnet High School is also identified as Kentwood High School throughout the record.

. Williams also named as additional defendants the Louisiana State Board of Elementary and Secondary Education, a fictitious insurer of TPSB, and Kentwood High.

. A judgment issued by the trial court on September 3, 2015 neither dismissed the case nor disposed of or dismissed Williams’ claims. Therefore, this court issued a show-cause order, directing the parties to brief the viability of the appeal and allowing the trial court to sign an amended judgment curing the apparent jurisdictional defect. On April 13, 2016, the trial court issued an amended judgment dismissing all of Williams’ claims against TPSB with prejudice. Because the amended judgment fully dismisses TPSB from this litigation, it is a partial final judgment which is immediately appealable. See La. C.C.P. art. 1915A(1) and (3); Motorola, Inc. v. Associated Indem. Corp., 2002-0716 (La.App. 1st Cir. 4/30/03), 867 So.2d 715, 719. Accordingly, the appeal is maintained.

. La. C.C.P. art. 966 was amended and reenacted by Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of Article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act; therefore, we refer to the former version of the article in tins case. See Acts 2015, No. 422, §§ 2 and 3.

. TPSB asserts its potential liability should be analyzed under La. R.S. 9:2800C. In response to a similar assertion by the State, the Broussard court noted that the elements of a claim under La. R.S. 9:2800C closely parallel the elements of a claim under Article 2322. The Broussard court pointed out that in order to hold a public entity liable under La. R.S. 9:2800C, a plaintiff must prove (1) custody or ownership of the defective thing by the public entity, i.e., garde; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive knowledge of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation, and concluded that its analysis would, therefore, be substantially the same regardless of whether Article 2322 or La. R.S. 9:2800C were applied. 113 So.3d at 183 n.4.

. Ehlinger found the following deficiencies: (1) The landing is inadequate in depth and should be at right angles to the door; (2) the riser height at the step down at the door side is less than 4 inches minimum height; (3) the step tread at the door has a spalled, deteriorated surface indicating no maintenance; and (4) the stair leading down into this area does not have any handrails.

. Since the record fails to establish an eviden-tiary basis to support a finding of an unreasonable risk of harm, it is unnecessary to address whether TPSB was entitled to summary judgment on this issue of whether it had actual or constructive notice of an unreasonable risk of harm.