WILLIAM A. CULPEPPER, Retired, Judge Pro Tem.
This is a personal injury suit filed by plaintiff, Lottie Johnson, against Acadiana Medical Center, Inc., and Aetna Casualty and Surety Company, as the liability insurer of Acadiana Medical Center. Trial was held on June 2, 1986, and the plaintiff was denied recovery. The plaintiff appeals this judgment.
FACTS
On June 20, 1984 Mrs. Lottie Johnson, a 76-year-old woman suffering from a variety of health ailments, including heart trouble and osteoarthritis, was seen by a doctor at the Acadiana Medical Center. The Aca-diana Medical Center is a medical facility which provides medical and pharmaceutical services in Ville Platte, Louisiana. It was renovated for its present use in 1983. The plaintiff testified she had previously visted the Medical Center about once a month since 1971. On leaving the center on June 20, 1984, after a visit to get pain medication, plaintiff opened the exit door with her left hand and took her first step with her right foot. However, the first step from the threshold of the door was only six inches wide, beyond which was a six-inch dropoff to the next step. Plaintiff fell at the first step, sustaining injuries which resulted in three hospitalizations and being placed under the care of an out-patient nursing service for two months.
Plaintiff filed suit against the owners of the Medical Center and their insurer, under LSA-R.S. 40:1722 and the Life Safety Code, alleging that the first step of the exit at the Center used by plaintiff was defective in that it was required to be at least as wide as the width of the door (in this case, at least three feet). The trial court held the violation of LSA-R.S. 40:1722 and the Life Safety Code was merely an imperfection or an imperfect situation which did not rise to the level of a defect which presented an unreasonable risk of harm to the plaintiff. Accordingly, the trial court rejected plaintiffs claim. The trial court also held, without explanation, that the Acadiana Medical Center, Inc. and its employees had not been negligent and that, even if the step was defective, Mrs. Johnson was guilty of contributory negligence or had *813 assumed the risk of falling. Plaintiff appeals this judgment.
ASSIGNMENTS OF ERROR
The plaintiff-appellant makes the following assignments of error:
1. The trial court erred in ruling that the Acadiana Medical Center, Inc., or its employees owed no duty to warn its patients of the dangerous six-inch dropoff and that the Acadiana Medical Center, Inc. was not negligent.
2. The trial court erred in relying upon facts which are not in the record and which are totally unsubstantiated by the testimony or the evidence.
3. The trial court erred in finding that plaintiff was contributorily negligent or had assumed the risk.
4. The trial court erred in ruling that because plaintiff was a resident of Ville Platte and a patient of Dr. Tas-sin, she had constructive notice of the defect and barred her action by assumption of the risk.
5. The trial court erred in ruling that contributory negligence was available as a defense in strict liability.
6. The trial court erred in finding that the steps of the Acadiana Medical Center which are in violation of the Life Safety Code were not defective and did not present an unreasonable risk of harm to plaintiff.
APPLICABLE LAW
The Duty Owed
In Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3d Cir.1982), writ denied, 412 So.2d 99 (La.1982), the duty owed by a hospital to its patrons was discussed at page 1178:
“The first inquiry is what, if any, duty was owed by the Hospital to plaintiff. Walker v. Union Oil Mill, Inc., 369 So. 2d 1043 (La.1979), stated at page 1047 that:
“ ‘The owner and operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. In determining a particular defendant’s duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant’s duty to a particular person, consideration should be given to the person’s age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. The duty would be greater to a person of young age and immature judgment. It would be lesser to a person with experience, knowledge and familiarity with the premises.’
“[4] The facility that we are concerned with is a hospital which, by its very nature, will be used frequently by the infirm, the feeble, and the elderly. Because of their age and/or infirmities, it is particularly difficult for these persons to safely move about. We believe that a hospital owes a duty to such persons to warn them of the existence of any obstacles or dangers, which may present a hazard to them, as they move about the hospital, or in and out of it. Defendant-Hospital owed this duty to plaintiff.”
We find that a medical center, by its nature, owes the same duty to its patrons as a hospital to warn them of hazardous conditions.
In Morgan v. Hartford Acc. & Indem. Co., 402 So.2d 640 (La.1981), the court analyzed a situation very similar to the situation of the plaintiff in the case before us. An 83-year-old woman, who could get around on her own without assistance, fell down an eight-inch step located at a doorway between a hall and a gown room in a church, suffering a broken hip. The plaintiff alleged the eight-inch step violated the 1967 Life Safety Code in two respects: the step at the door was not equal to at least the width of the door and the step itself exceeded the maximum height for steps. It was established that there was no warning informing one approaching the passageway that there was an unusual condition, nor was there a highlight of the area *814 to make it more visible, either of which remedies the court found could easily have been provided and would have cured the defective step. See also, Miller v. Broussard, 430 So.2d 330 (La.App. 3d Cir.1983), writ denied, 434 So.2d 1093 (La.1983) (“step up” and “step down” warning signs were held to cure the defective, non-apparent seven-inch change in elevation at a doorway in a public building). In Morgan an architect presented by the plaintiffs testified that the drop separating the two rooms was not apparent. The Morgan court found that positioning the door at the edge of the drop on the high side effectively hid the drop while the door was closed, so that an unsuspecting patron opening the door would step off the drop.
According to Morgan, the 1967 Life Safety Code requires that, in the situations where there is a door by a step, a distance of the width of the door must be left between the door and the edge of the step. Morgan, supra, at 642 Footnote 2. The court in Morgan concluded that, in view of the evidence and the fact that the building in question was a church where strangers were often in attendance, the unexpected drop between two rooms in the building without attendant warning presented an unreasonable risk of injury for which the defendant was liable under LSA-C.C. art. 2317. The court also found, for the same reasons, that defendant was negligent in failing to warn of this unexpected condition.
The trial court in the present case relied on Cloud v. State, 420 So.2d 1259 (La.App. 3d Cir.1982), writ denied 423 So.2d 1166, 1167 (La.1982), which dealt with variations in the riser heights of steps. No violation of the Life Safety Code was found. However, the present case involves the width of the tread of a step. We find the Life Safety Code establishes that standard for the proper width of a doorway step and failure to comply with this minimum standard under the particular facts of this case constitutes an unreasonable risk of harm. Our conclusion in this regard is based in part on the statements and conclusions which appear in Morgan v. Hartford Acc. & Indem. Co., supra, (particularly footnote 2 which appears on page 642 of the opinion) because the Life Safety Code was not made a part of the record in this case. Moreover, as will be noted later, plaintiff produced an architect who testified concerning requirements of the Life Safety Code.
BREACH OF DUTY
The burden of proof for imposing strict liability was discussed in Morgan v. Hartford Acc. & Indent. Co., supra, at 641:
“The legal requirements for imposing liability under Article 2317 have been described by this Court in Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980) as follows:
“ ‘When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former’s part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.’
“Additionally, in Shipp v. City of Alexandria, 394 So.2d 267 (La.1980), this Court further explained that:
“ ‘An injured party seeking damages under art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by the defect.’ ”
The defendant has admitted that the building was under the care and custody of defendant at the time of the accident. It is clear from plaintiff’s testimony that plaintiff’s injury was caused when she stepped *815 from the exit of the Medical Center to outside where the six-inch dropoff was located, resulting in her fall and injuries. A doctor’s assistant who was working at the Center at the time of the accident testified that she was called to the scene by a patient in the lobby and found plaintiff seated just outside the doorway in the center of the first landing of the porch. She also testified she checked for liquid, leaves, debris, a rug or anything else in the immediate area which might have caused plaintiff to slip, but she found nothing. Therefore, the only remaining issue is whether plaintiff met the burden of proving that the six-inch dropoff created an unreasonable risk of injury.
Plaintiff established by unrebutted evidence that the six-inch dropoff violated the Life Safety Code in that the step extended only six inches from the doorway. There must be at least a distance of the width of the door between the doorway and the edge of the step. Plaintiff presented an architect who was accepted as an expert witness without objection and gave unrebutted testimony as to the Life Safety Code requirements and the exact measurements of the dropoff, and gave as his opinion that the dropoff was unsafe because it was an unexpected change of level.
We find that because the dropoff was unapparent and unexpected, and there were no signs to warn Medical Center patrons of it, the dropoff presented an unreasonable risk of harm. Warning signs could easily have been provided and would have cured the defect. See Morgan v. Hartford Acc. & Indem. Co., supra, at 642. Therefore, the defendant is strictly liable to plaintiff under LSA-C.C. art. 2317 for her injuries.
The defendants attempted to present this case as a “slip and fall case” in the pattern of those cases in which a fall is caused by a person slipping on a foreign object or substance on the floor of the premises. The defendants hang their claim on the fact that Mrs. Johnson used the words “slip” and “slipped” in attempting to explain how she fell. By implication at least, defendants suggest there was no foreign object or substance which could have caused a slip. Our appreciation of the matter is that plaintiffs fall was not caused by the variety of mishap suggested by defendants and her use of the words “slip” or slipped” mean no more than that she did fall. In our opinion she fell for the reasons given above which are attributable to a defect in the premises.
CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF THE RISK
The trial court found that the plaintiff, as a resident of Ville Platte and a regular patient of the clinic for several years, knew or should have known of the condition of the Medical Center exit and therefore either assumed the risk of falling or was contributorily negligent.
We find that the plaintiff was not contributorily negligent. The plaintiff was 76 years old and infirm. Under these circumstances, plaintiffs actions in merely stepping through the doorway and missing this type of step did not fall below the proper standard of care to be exercised by a reasonable person in like circumstances. See Morgan v. Hartford Accident and Indemnity Co., supra; St. Paul Fire & Marine Ins. Co., supra.
The defense of assumption of the risk is available to defendant against the strict liability claim and was discussed in Dorry v. LaFleur, 399 So.2d 559, 562 (La.1981):
“ ‘The defense of assumption of risk presupposes (1) that the plaintiff had some knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk. Therefore, except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant’s conduct unless he then knows of the existence of the risk and appreciates its unreasonable character, including the magnitude thereof, and voluntarily accepts the risk.’
While the court of appeal was correct in applying the defense of voluntary assumption of risk to the case, in so doing *816 it erroneously incorporated in the defense an objective element foreign to the doctrine.”
* * * * # *
“This is not to say that the plaintiff’s disclaimer of knowledge or appreciation must be taken at face value. This is a fact question. And there are some risks that every man must be held to appreciate, (see Restatement, supra, comment d). There is a plain difference, however, between what one must have known (a finding of actual knowledge) and what one should have known (the imposition of an objective standard of care).
“The trial court did not find that plaintiff must have been aware of the puddle which caused his fall. It found only that he should have been aware of it. But such a negligent failure to know is not a defense in a case where contributory negligence does not bar plaintiff’s recovery.”
The defendant failed to raise the affirmative defense of assumption of the risk in any pleadings,[1] as required by LSA-C.C.P. art. 1005. However, evidence as to how many times plaintiff had visited the Medical Center in the past was introduced by defendant without objection by plaintiff. This evidence does not apply to the contributory negligence defense to show plaintiff should have known of the condition of the exit and that her conduct fell below the standard to which a person should conform for her own safety and protection,[2] but rather tends to show plaintiff must have known of the condition of the exit and assumed the risk of leaving the building through it. Therefore, the pleadings have been enlarged to include the defense of assumption of the risk,[3] and it can be considered by this court.
Assumption of the risk is equated with the victim fault defense to strict liability. Sumner v. Foremost Ins. Co., 417 So.2d 1327 (La.App. 3d Cir.1982). The fault of the victim that defeats recovery for harm occasioned by strict liability imposable upon a defendant involves a voluntary exposure to the risk with full knowledge and appreciation of the danger. Hebert v. Maryland Cos. Co., 369 So.2d 708 (La.1979); Sumner, supra, at 1334.
We find the defendant has not established that plaintiff must have been aware of the dropoff in the doorway. The testimony of the plaintiff and the doctor at the Medical Center established that plaintiff had visited the Center about once a month since 1971, although she did not necessarily use that exit each time. However, although plaintiff may have encountered the defective step before, testimony was given that plaintiff was in pain when she visited the Center on the day of the accident and had gone there to pick up medication for her back pain. The plaintiff never stated she was aware of the danger of falling down the step, and the testimony tends to show that, because of plaintiff’s back pain at the time, she was unable to appreciate and avoid unexpected hazards in the passageways of the Center. Since a medical center owes a duty to warn its infirm, feeble and elderly patrons of obstacles which either their infirmities or age make it difficult for them to safely negotiate, we *817 hold that defendant has not established that plaintiff did knowingly and voluntarily assume the risk of falling at the defective step in the exit doorway. Nor do we believe that, at the time of the accident, plaintiff understood and appreciated the risk of falling in the doorway. Therefore we hold defendant strictly liable for plaintiffs injuries caused by the defective condition of the doorway.
QUANTUM
The testimony of plaintiff and her two treating physicians and the medical records showed that, as a result of her fall, plaintiff suffered a trauma to her right elbow and a severe avulsion on the top of her right foot which required 50 stitches. The avulsion on plaintiffs foot later became gangrenous, requiring a skin graft taken from her right thigh. Plaintiff subsequently used a walker for a while and paid a neighbor $30 per week for five weeks to help her around the house. Plaintiff was hospitalized three times for a total of two weeks.
We find plaintiff has proven medical expenses to support an award of $9,124.50. We also find plaintiff is entitled to an award for general damages of $25,000. See Bivalacqua v. Aube, 493 So.2d 209 (La.App. 5th Cir.1986); Wilkinson v. Hartford Acc. & Indem. Co., 421 So.2d 440 (La.App. 3d Cir.1982); Rester v. T.L. James Const. Co., 415 So.2d 272 (La.App. 1st Cir.1982), writ denied, 420 So.2d 446 (La.1982); Great American Ins. Cos. v. Marshall, 355 So.2d 1044 (La.App. 4th Cir.1978).
CONCLUSION
Accordingly, for the reasons assigned above, the judgment of the trial court is reversed and the plaintiff is awarded $34,-124.50 for damages, with interest from date of judicial demand. The costs of appeal are assessed to defendant.
REVERSED AND RENDERED.

.In Murray v. Kuhn, 345 So.2d 917 (La.App. 4th Cir.1977), the court held that, although the defense of contributory negligence had been raised through pleading that plaintiff was negligent, and therefore could be considered on appeal, the defense of assumption of risk was not raised in the pleadings and would not be considered. But see, Ernest v. Smith, 306 So.2d 926 (La.App. 1st Cir.1974), writ refused, 310 So.2d 645 (La.1975), which held the defense of assumption of the risk was pleaded through asserting the plaintiffs injuries were caused solely by his own negligence. We believe the holding in Ernest, supra, confused the different burdens of proving contributory negligence and assumption of the risk by erroneously relying on Pax-ton v. Ballard, 289 So.2d 85 (La.1974), which held that pleading the negligence of plaintiff was sufficient to assert the affirmative defense of contributory negligence. However, in the case before us, we find that assumption of the risk was raised by enlargement of the pleadings at trial.

. See Morgan v. Hartford Acc. & Indem. Co., 402 So.2d 640 (La.1981); Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3d Cir.1982), writ denied, 412 So.2d 99 (La.1982).

. See Sanders v. New Orleans Public Service, Inc., 422 So.2d 232 (La.App. 4th Cir.1982).