GARRETT, J.
The defendant, European Service, Inc., appeals from a city court judgment that ordered it to pay damages to a customer whose car has never been returned after being left for repairs that were supposed to take three weeks. We affirm.
FACTS
What should have been a relatively easy matter to resolve in city court with minimal expense or delay to the parties has now spanned almost five years.[1]
In July 2012, the plaintiff, James Davis, took his 1996 Mercedes Benz C220 to a repair shop located at 2111 Louisville Avenue in Monroe. According to the invoice given to Davis, the shop's name was "European Motors." Davis apparently dealt with Jeff Stegall, the service manager, and Ali Moghimi, the apparent owner.[2] According to Davis, he was told that the repairs would take three weeks. He paid a deposit of $2,000 for the work to be performed. However, the car has never been returned and the record does not disclose what has become of it.
On October 19, 2012, Davis, acting in proper person, filed a fill-in-the-blanks form petition in Monroe City Court, alleging that his car had been in for repairs for more than three months at European Motors. He sought the return of his vehicle, *1102 and a refund of his $2,000 deposit and the small claims filing fee. In addition to European Motors, Davis named Stegall as a defendant, and the plaintiff requested that service be made on "European Motors/Jeff Stegall," at the Louisville Avenue address.
On October 29, 2012, Stegall, in proper person, filed an answer denying the allegations. He claimed that, as service manager, he was an agent or employee of European Motors and did not deal with the plaintiff in his individual capacity. Although he admitted the repairs were incomplete, he stated it was because the plaintiff failed to pay the amount requested in advance. He further asserted that more parts and labor were expended on the car than had been paid for by the plaintiff. In November 2012, Stegall filed a motion for summary judgment, alleging that he had no liability in the instant matter. The motion was eventually granted in February 2013, but all of the plaintiff's claims against European Motors were reserved.[3]
On March 15, 2013, a declinatory exception of insufficiency of service of process was filed by Moghimi, acting in proper person.[4] He contended that service was improperly made, first upon Stegall, and then upon himself "d/b/a European Motors." He asserted that it was not valid because (1) he was not the registered agent for service of process for European Motors, Inc., which was domiciled in Rapides Parish; (2) he was not doing business as European Motors; and (3) the place where service was made was a business, not "the domicile, dwelling house or usual place of abode" of him or European Motors. He claimed that the entity doing business at the Louisville Avenue address was a different company, "Ouachita European Auto Service, LLC," for which he was not the registered agent and which had its charter revoked. Attached to the pleading was a document from the Louisiana Secretary of State which showed that Ouachita European Auto Service, LLC, had a revoked charter. The address given for this company was the Louisville Avenue address. However, it also showed that Moghimi had been both the registered agent and an officer of this entity, and that he had a West Monroe address.[5]
*1103 On April 4, 2013, Moghimi filed a "motion to traverse certificate of readiness and to set aside fixing for trial," which stated it was "for the purpose of preventing a miscarriage of justice." He stated that he had received a notice that the matter had been set for trial on May 6, 2013. He then enumerated reasons why he believed the matter was not ready for trial.
On May 2, 2013, an answer was filed for European Service, Inc., by Moghimi as CEO. He asserted that the plaintiff was quoted a total price of $5,300 ($3,500 for used engine, $1,500 for replacing wiring harness and motor mounts, and $300 for replacing oil seals), and that the plaintiff agreed to pay and made a deposit of $2,000. He said that the defendant stopped work on the car after installing the replacement engine because it was apparent the plaintiff was not going to pay. He alleged that the plaintiff was told that the parts would be removed and he could come get the vehicle if he did not make full payment. The plaintiff neither paid nor retrieved the car. The defendant further asserted the affirmative defense of failure of consideration. In addition to the answer, Moghimi also propounded extensive discovery requests.
At a hearing on the exception on May 2, 2013, Moghimi insisted that the matter was moot because the work had been performed on the car and it was ready to be picked up. He declared his intention to file a reconventional demand for payment once Davis picked up his car. Davis said that this was the first time he had been informed that the car was ready. The trial court subsequently continued the May 6, 2013 trial date, noting that Davis had just hired an attorney and each side had requested that the trial be continued. On May 3, 2013, the court issued a written ruling which also granted the defendant's exception and gave the plaintiff 30 days to amend his petition to include the proper party.
On May 31, 2013, the plaintiff's attorney filed a first supplemental and amending petition. Named as defendant was European Service, Inc., which was domiciled in Monroe and whose agent for service of process was Dr. Nejad. The petition alleged that on July 9, 2012, the plaintiff took his 1996 Mercedes C220 to European Motors for repairs after the head-gasket broke and that it was decided that a working used engine and a new wiring harness would be installed. Stegall told the plaintiff that the used engine would cost $2,500 and the wiring harness $1,000. Moghimi told the plaintiff that he would need one-half of the total repair cost; the plaintiff put down a deposit of $2,000. Although the plaintiff was told that the work would only take two to three weeks, he was subsequently given a myriad of excuses why the work was not completed. According to the petition, he still had not gotten his car back. He requested the return of his deposit; return of his car or its value; reimbursement for alternative transportation; and other damages, including inconvenience and loss of use, as well as attorney fees and court costs. The petition requested service upon Dr. Nejad at his Bramble Drive address in Monroe.
On June 4, 2013, "Ali Moghimi dba European Motors" filed a motion to dismiss the lawsuit due to the plaintiff's alleged failure to amend his petition and a motion to compel the plaintiff to respond to discovery matters. In a memorandum opposing these motions, plaintiff's counsel recounted conflicting information she received as to whether the amended petition had been served. In particular, the plaintiff noted that he had received notice from the deputy clerk of court that service on Dr. Nejad could not be achieved *1104 because "SUBJECT UNKNOWN AT ADDRESS." As a result, pursuant to La. C.C.P. art. 1261(B)(1), counsel for the plaintiff requested personal service on Moghimi as secretary/treasurer, which occurred at the Louisville Avenue address on July 15, 2013.
On July 30, 2013, another declinatory exception of insufficiency of service of process was filed by Moghimi as "officer of Defendant Pro Se European Service, Inc." He complained that service was made on him, not the registered agent, and that the plaintiff filed his amended petition without leave of court. On January 21, 2014, the plaintiff responded to this exception, stating that service was properly made on Moghimi pursuant to La. C.C.P. art. 1261(B)(1) because service on Dr. Nejad could not be achieved.
In September 2014, plaintiff's counsel withdrew because she had been hired for a corporate position that precluded her from continuing to handle the case. In August 2015, the plaintiff, again in proper person, filed an amended petition in which he alleged that European Service, Inc., initially quoted him a price of $2,000 to repair his car, kept the vehicle for more than three months without repairing it, and later requested more money for the repairs. He requested return of the $2,000 payment, plus $5,000 attorney fees, filing fees and return of the car. He requested service on the defendant at the Louisville Avenue address. The record shows it was served on Destin Cook, the sales manager, on August 5, 2015.
On August 10, 2015, another hearing was held. During a lengthy discussion of addresses, it was revealed that Moghimi and Dr. Nejad both lived at the Bramble Drive address. The judge inquired why the bill given to the plaintiff had "European Motors" at the top-not "European Service," the company Moghimi claimed was the proper defendant-and questioned whether Moghimi was trying to evade service. Moghimi asserted that the design of the bill heading was due to a computer program which provided too few lines at the top of the page. Although the trial court stated that it believed service had been perfected, it directed the plaintiff to have the clerk of court serve the petition and amended petition at the Bramble Drive address. The court ordered the parties to return for a hearing on November 3, 2015, and scheduled trial for November 17, 2015. No one objected to these settings.
On October 29, 2015, Elham Moghimi, Moghimi's wife ("substituting Ad hoc for her husband"), filed a motion for continuance on the basis that her husband was on a trip to Iran and would not be able to return in time for the November 3, 2015 hearing because he had been "unavoidably detained." No other details were given. She further requested that "the trial presently fixed for March 24, 1995" be refixed. This motion was denied in open court on November 3, 2015. At the conclusion of that hearing, the trial court stated that all of the defendant's motions were denied at that point.
Trial was held on November 17, 2015.[6] Davis testified as to the details of his dealings with Moghimi and Stegall, including the many excuses they gave him for their failure to complete the car repairs. He stated that he had never gotten his car back and had no knowledge of where it was. He further testified that, until he bought another car in early 2013, his lack of transportation caused him to lose 20 days as a substitute teacher for the Ouachita *1105 Parish School Board. The plaintiff's brother, Andrew Jones, testified that he was present at the repair shop during a discussion of the deposit his brother paid, and he verified the plaintiff's testimony about his lack of transportation. Numerous exhibits were introduced to corroborate the testimony. The trial court ruled in favor of the plaintiff and awarded him the following: $3,175.00 for the Kelley Blue Book value of the unreturned car; $2,000 for the money given to the defendant for repairs; $634.70 for car rental; $1,200 for loss of wages; and all court costs. Judgment was signed on November 23, 2015.
On December 9, 2015, European Services, Inc., (now represented by an attorney) filed a motion for new trial, which raised several issues: the denial of the motion to continue; the amended petitions; the alleged failure to properly serve the registered agent; the damages awarded; and the assessment of all costs to the defendant. A hearing was held on February 3, 2016, at which Moghimi and his attorney were present. Although served, Davis did not attend. Moghimi contended that he was unable to attend the trial because, while he was in Iran to resolve family matters arising from his father's death earlier in the year, his mother also died. Due to her death, he allegedly experienced blood pressure problems; was given an improper dosage of blood pressure medication by a pharmacist; and was seriously injured in a fall caused by the medication. He claimed to have a phone record that corroborated his assertion that he had contacted Davis, who allegedly agreed to the continuance. However, he did not bring the phone record to court. The trial court left the record open to allow Moghimi to produce additional proof of the alleged agreement with Davis to continue the trial. Although the record was left open for several months, no such proof was ever provided.
Meanwhile, on May 25, 2016, a judgment debtor exam was held, at which Moghimi resumed his self-representation. He stated that the judgment the plaintiff had was against a corporation that was no longer doing business and had no assets.[7] He further stated that he might loan money to the corporation so that it could pay the debt in monthly increments of $250.[8]
The motion for new trial was eventually denied in July 2016, after the court determined that enough time had passed for Moghimi to provide additional documents and he had failed to do so.
The defendant, once again represented by counsel, filed a devolutive appeal.
SERVICE OF PROCESS
The defendant contends that proper service of process was never made on European Service, Inc., because his father-in-law, as registered agent, was never served.
Law
La. C.C.P. art. 1261 provides, in relevant part:
A. Service of citation or other process on a domestic or foreign corporation *1106 is made by personal service on any one of its agents for service of process.
B. If the corporation has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made by any of the following methods:
(1) By personal service on any officer, or director, or on any person named as such in the last report filed with the secretary of state.(2) By personal service on any employee of suitable age and discretion at any place where the business of the corporation is regularly conducted.
Discussion
The record reflects that the plaintiff's counsel received a notice from the deputy clerk of court that the requested service upon Dr. Nejad had been attempted but not made because the subject was "unknown at address." Thereafter, counsel had service made on Moghimi as an officer of the corporation. Such a procedure is authorized by La. C.C.P. art. 1261(B). Consequently, we find that service was proper and that the defendant's arguments are without merit.
AMENDED PETITIONS
The defendant argues that the plaintiff's amended petitions should not have been allowed because they were filed without leave of court.
Law
In pertinent part, La. C.C.P. art. 1151 states:
A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.
La. C.C.P. art. 932 specifies, in relevant part:
When the grounds of the objections pleaded in the declinatory exception may be removed by amendment of the petition or other action of plaintiff, the judgment sustaining the exception shall order the plaintiff to remove them within the delay allowed by the court.
Discussion
Contrary to the defendant's assertion in brief that the plaintiff amended his petition three times without leave of court, the record reveals that only two amended petitions were filed.
When the trial court sustained the defendant's first declinatory exception of insufficiency of service of process, it directed the plaintiff to file an amended petition within 30 days. The first amended petition was filed during that time period. There is no necessity to require permission of the Court to file an amended petition, complying with an order of the Court to do so, where an exception was maintained. See King v. Burris , 57 So.2d 779 (La. App. 1 Cir. 1952).
The second amended petition was filed on August 4, 2015. The only significant difference between this amended petition and the plaintiff's original petition was a request for attorney fees. However, this was also prayed for in the first amended petition and, at any rate, the trial court denied that request at trial. Consequently, *1107 we find the failure of the plaintiff, acting in proper person, to secure leave of court before filing the second amended petition was of no consequence in the instant case.
DENIAL OF CONTINUANCE
The defendant argues that the trial court erred in failing to grant the motion for continuance filed on its behalf by Moghimi's wife, who is not an attorney. It contends that it articulated "good grounds" for a continuance.
Law
A continuance may be granted in any case if there is good ground therefor. La. C.C.P. art. 1601. A motion for a continuance shall set forth the grounds upon which it is based, and if in writing shall comply with the provisions of Article 863. La. C.C.P. art. 1603.
A denial of a motion for continuance will not be disturbed on appeal absent a showing of an abuse of discretion by the trial court. Johnson v. Byrd , 48,411 (La. App. 2 Cir. 9/25/13), 125 So.3d 1220.
Discussion
A motion for continuance was filed by Moghimi's wife "substituting Ad hoc for her husband." She is not an attorney, and nothing in the record established that she was "a duly authorized partner, shareholder, officer, employee, or duly authorized agent or representative" of the corporation under the provisions of La. R.S. 37:212, and thus entitled to represent European Services, Inc.[9] Furthermore, the motion merely stated that Moghimi had traveled to Iran on September 22, 2015, with an anticipated return date of October 17, 2015, and that "his departure has been unavoidably detained." She asserted that his inability to return from Iran was good grounds for a continuance. No mention was made of Moghimi's subsequent claims pertaining to his mother's death or his own ill health.
Based on the record before us, we find no abuse of the trial court's denial of a motion for continuance filed by an unauthorized person which failed to state good grounds for the requested continuance. See and compare Mayeaux v. Christakis , 619 So.2d 93 (La. App. 5 Cir. 1993).
MOTION FOR NEW TRIAL
In his last assignment of error, the defendant asserts that the trial court erred in denying its motion for new trial. It maintains that Moghimi had actively defended the lawsuit and would have continued to do so if a continuance had been granted.
Law
A new trial shall be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law and the evidence. La. C.C.P. art. 1972(1). Although the grant of a new trial under this provision is mandatory, the jurisprudence interpreting it recognizes the trial judge's discretion in determining whether the judgment is indeed contrary to the law and evidence. Nugent v. Car Town of Monroe, Inc. , 50,910 (La. App. 2 Cir. 9/28/16), 206 So.3d 369. A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. La. C.C.P. art. 1973.
*1108 The standard of review in ruling on a motion for new trial is whether the trial court abused its discretion. Nugent v. Car Town of Monroe, Inc. , supra.
The casting of costs is within the discretion of the trial judge. La. C.C.P. art. 1920 ; Johnson v. European Motors-Ali , supra.
Discussion
In his motion for new trial, the defendant argued that the trial court erred in several respects, including its failure to grant a continuance, its award of damages, and its assessment of all court costs to the defendant. However, in the defendant's discussion in brief of this assignment of error, the only issue specifically addressed in any detail is the motion for continuance. That matter was discussed infra and resolved adversely to the defendant.
As to the merits, the defendant argued only that the motion for new trial was "submitted upon good grounds." After reviewing the record, we find the trial court did not abuse its discretion in denying the motion for new trial. Given the facts of the case, especially the extensive period of time the plaintiff has been deprived of his vehicle, the damages are not unreasonable and were fully supported by the evidence adduced at the trial.
CONCLUSION
The judgment is affirmed. Costs are assessed against the appellant, European Service, Inc.
AFFIRMED.
BLEICH, J. (Pro Tempore ), concurs with written reasons.
BROWN, C.J., concurs with the opinion and Judge Bleich's written reasons.
BLEICH, J. (Pro Tempore ), concurs.
Louisiana C.C.P. art. 2164 provides for the imposition of damages for frivolous appeals. This court may award such damages when there is no serious legal question presented and when it is evident that the appellant's counsel and/or appellant does not seriously believe in the position that he advocates. It is also clear that the court may award frivolous appeal damages against both the claimant and his attorney. Mitchell v. Brown Builders , 39,673 (La. App. 2 Cir. 05/11/05), 902 So.2d 1288, 1292. Because this provision is penal in nature, it must be strictly construed. Id. Damages will not be awarded unless it appears that the appeal was taken solely for the purpose of delay , serious legal questions are not raised, or the appellate counsel does not seriously believe in the position he advocates. Id. (Emphasis added).
Considering the straightforward issue before the trial court, clearly addressed by Judge Garrett, and the inordinate amount of time it took for Davis to obtain relief, it is apparent that this appeal was simply one additional step in Moghimi's systematic pattern to delay paying Davis and avoid his patently clear, legal, and moral obligation. Damages should be awarded to Davis, payable only by Moghimi, for having to address and defeat this most frivolous appeal.
Furthermore, in this case, Ali Moghimi was involved in a method of deception that involved hiding or obscuring the truth to the extent I believe he should not enjoy the luxury of protection of his corporate (or LLC) entity. It is evident by this record that solely due to Moghimi's subterfuge, (1) the course of seemingly straightforward litigation in city court was needlessly extended for a period, to this date, of five years, and, (2) Davis was left with a judgment against a corporation no longer in business and without assets.
It is well settled that a corporation is a distinct legal entity, separate from the individuals *1109 who comprise it. La. C.C. art. 24 ; Kemper v. Don Coleman, Jr., Builder, Inc. , 31,576 (La. App. 2 Cir. 07/29/99), 746 So.2d 11, 18, writ denied , 1999-2954 (La. 01/07/00), 752 So.2d 861, and writ denied , 1999-2955 (La. 01/07/00), 752 So.2d 861. However, on the record before us, it is difficult to see any separation between Moghimi and European Service, Inc. (or European Motors, or Ouachita European Auto Service, LLC, for that matter); Moghimi and his business(es) simply and completely merge into a single entity (or person, i.e. Moghimi), leaving Davis with virtually no legal recourse or relief.
Although the trial court was not called to address specifically the issues of fraud, malfeasance, or wrongdoing, at the end of the day, James Davis was out $2,000.00, as well as his vehicle, with no cogent explanation by Moghimi. Now, Davis is left with a judgment against a corporation that Moghimi claims is no longer in business or has any assets. And despite Moghimi's claim he has over a million dollars in the bank, he has offered only to pay Davis $250 a month. Fortune, based upon fraud, should not cause Moghimi to escape further relief being afforded Davis.

City courts and parish courts are trial courts of limited jurisdiction. La. C.C.P. art. 4832. Thus, it may be said that city courts, like parish courts, were created to provide a forum for plaintiffs in small, uncomplicated cases with relatively small damages. See In re Gas Water Heater Prod. Liab. Litig. , 97-2028 (La. 4/14/98), 711 So.2d 264.

At a May 2, 2013 hearing, Moghimi informed the court that "European Motors" was an entity which sold cars at that location, but "European Service" was the company that provided service on European cars. He then stated that the owners of European Motors were himself; "Mr. Nejad" (apparently his father-in-law, Dr. Jahangir J. Jahanfir-Nejad, a retired oncologist, who is hereinafter referred to as "Dr. Nejad"); and Destin Cook. However, he specifically named himself as the sole owner of European Service. At a judgment debtor rule conducted on May 25, 2016, Moghimi contradicted that statement by declaring that European Service was owned by his father-in-law.

The transcript of the hearing on the motion for summary judgment demonstrates that Moghimi was present and requested that the court allow him time for "discoveries." We point this out to show that Moghimi was actively involved in this protracted litigation from its inception. In fact, there is a complaint in the defendant's subsequent motion for new trial about having "to undergo the expense" of the motion for summary judgment to remove Stegall from the litigation.

Moghimi apparently has a lengthy history of self-representation in Monroe City Court for a variety of companies in which he has ownership interests. Many of these cases have been further litigated before this court or the Louisiana Supreme Court as appeals or writs. They include Craig v. Moghimi , 2015-0325 (La. 4/24/15), 169 So.3d 360 ; H.D. Graphics, L.L.C. v. It's Permanent, L.L.C. , 49,405 (La. App. 2 Cir. 10/1/14), 150 So.3d 936 ; Johnson v. European Motors-Ali , 48,513 (La. App. 2 Cir. 11/20/13), 129 So.3d 697, writ denied , 2013-2964 (La. 2/28/14), 134 So.3d 1178 ; Davis v. European Servs., Inc. , 2013-0376 (La. 4/1/13), 110 So.3d 588 ; Moghimi v. Rawls , 2013-0398 (La. 4/1/13), 110 So.3d 590 ; and Watkins v. Freeway Motors , 29,385 (La. App. 2 Cir. 4/2/97), 691 So.2d 854.

When he subsequently filed a memo in support of the exception on May 2, 2013, Moghimi attached two other such documents from the Louisiana Secretary of State. One was for "European Motors Incorporated," an inactive business on Rapides Avenue in Alexandria, whose registered agents were Joseph Stone and David A. Sheffield. The other was for "European Service, Inc.," which listed the Louisville Avenue in Monroe; it also listed Moghimi as Secretary/Treasurer (with the Louisville Avenue address) and Dr. Nejad as both an officer and the registered agent. The address given for Dr. Nejad as an officer was the Louisville Avenue one, but the registered agent address was on Bramble Drive in Monroe. It stated that the charter was revoked on May 18, 2012, and reinstated on May 1, 2013.

The transcript reflects that the court had two separate trials on that day involving Moghimi. The plaintiff in the other case, Golden Craig, appears to be the same litigant as in Craig v. Moghimi , supra.

We note this statement with great interest in light of Moghimi's insistence throughout the proceedings that European Service, Inc., was the proper entity to be sued.

The information gleaned from this hearing included Moghimi's declaration that he personally had more than $1 million in a bank, two aircraft, and property, but that European Service had no bank accounts and no property. He further stated that the corporation was owned by his "ailing father-in-law, Dr. Nejad," who was now bedridden and "incoherent." This differed from Moghimi's statement at the May 2, 2013 hearing when he declared that he owned all the stock in European Service.

La. R.S. 37:212(C) provides:
C. Nothing in this Section shall prohibit any partnership, corporation, or other legal entity from asserting or defending any claim, not exceeding five thousand dollars, on its own behalf in the courts of limited jurisdiction or on its own behalf through a duly authorized partner, shareholder, officer, employee, or duly authorized agent or representative. No partnership, corporation, or other entity may assert any claim on behalf of another entity or any claim assigned to it.