COX, J.
Archie Johnson filed a request for review by a medical review panel, alleging medical malpractice and delayed treatment by Dr. Raj Bhandari. The medical review panel did not find in favor of Mr. Johnson. Mr. Johnson then filed his medical malpractice suit against Dr. Bhandari in the Fourth Judicial District Court, Morehouse Parish, Louisiana. The trial court granted Dr. Bhandari's motion for summary judgment and dismissed Mr. Johnson's claims with full prejudice. Mr. Johnson has appealed the trial court's judgment. For the following reasons, we affirm.
FACTS
On April 14, 2008, Mr. Johnson visited the office of Dr. Bhandari. Mr. Johnson was referred by Dr. Allen Spires, his primary physician, because of an elevated liver test and positive test for Hepatitis C. He did not have health insurance at the time of the visit. The consultation report notes that Mr. Johnson admitted to a history of IV drug use 35 years ago in Vietnam, leading to his discharge from the military. He had no other Hepatitis risk factors. The consultation report also states Mr. Johnson drinks one to two beers every other day.
Dr. Bhandari's impressions from this 2008 visit were that Mr. Johnson had chronic Hepatitis C, elevated total protein, and he suspected Mr. Johnson would likely have cirrhosis. It was recommended that Mr. Johnson receive further tests for Hepatitis C, HIV, and Hepatitis B. Mr. Johnson was also advised to stop drinking all alcohol.
Mr. Johnson's medical history included in the record is silent from 2008 until an emergency room visit on September 18, 2013, for abdominal pain. Mr. Johnson visited Dr. Spires on December 12 and 18, 2014, for abdominal pain. He was given a prescription for doxycycline hyclate and told to call if his symptoms worsened or persisted and return to the clinic as necessary.
Mr. Johnson visited Dr. Bhandari again on May 27, 2015, after another referral from Dr. Spires. Mr. Johnson was seeking Dr. Bhandari's opinion regarding his Hepatitis C and had no symptoms other than fatigue. His consultation report stated he was not drinking alcohol or using tobacco. Dr. Bhandari's listed impressions from this visit were Hepatitis C and a colon cancer screening. Dr. Bhandari recommended that Mr. Johnson have a colonoscopy, ultrasound, and lab work. Mr. Johnson *964 agreed with the plan and the colonoscopy was scheduled for June 8, 2015.
On May 28, 2015, Mr. Johnson had an ultrasound of his abdomen. After reviewing the ultrasound, the radiologist recommended a CT scan. On June 3, 2015, Mr. Johnson received the follow-up CT scan of his abdomen. Also on June 3, 2015, Mr. Johnson was notified by a nurse with Dr. Bhandari's office that his drug screen taken on May 27, 2015, came back positive for marijuana. She told him that it could take his insurance company up to three months to approve or deny the request for his medication and that they do look at drug screens to help make their determination. She noted that he verbalized his understanding of what she said.
On June 8, 2015, Mr. Johnson received another ultrasound of his abdomen after complaints of abdomen pain. The radiologist concluded Mr. Johnson presented a "normal study." Mr. Johnson was notified of the ultrasound results on June 12, 2015, and verbalized his understanding.
Mr. Johnson returned to Dr. Bhandari on June 17, 2015. Dr. Bhandari's notes stated Mr. Johnson did not have his colonoscopy. His impression at this visit was that Mr. Johnson had Hepatitis C with cirrhosis of the liver. Dr. Bhandari recommended the following:
1. I have recommended he consider an upper endoscopy but he does not wish to have an upper endoscopy at this time to evaluate for esophageal varices due to the high risk of cirrhosis.
2. He should consider colon cancer screening. He had it about ten years ago in Wisconsin. He will let us know [if] he wishes to have this done. He has been explained the risks of colon cancer screening and surveillance and colon cancer mortality.
3. He needs an ultrasound every six months and alpha fetoprotein. He has been explained he will need this every six months due to the history of cirrhosis.
4. We will try to get him approved for Harvoni.
Dr. Bhandari noted that Mr. Johnson agreed with the above plan and all questions were answered. On August 5, 2015, the nurse's notes state Mr. Johnson requested he be referred to a "gastro clinic to change GI doctors." His medical records were to be faxed to the clinic.
In September 2015, Mr. Johnson visited Dr. Ann Maguire in Milwaukee, Wisconsin. Mr. Johnson's first visit with Dr. Maguire was on September 15, 2015. Her notes state his visit was to establish care. She noted that he lives in Louisiana, but was visiting Wisconsin for a few months to visit his mother. He complained of abdominal pain that "he has had for years, but the last 6 [months] has been really bad." During the visit, Mr. Johnson stated he had liver inflammation in 2011, he has not used cocaine in 20 to 30 years, and he thinks the pain increases with meals. He confirmed that he occasionally has one beer.
Mr. Johnson's medical history from Wisconsin states he visited Dr. Ditah on September 22, 2015, but few details are given. The impression notes state, "2 benign-appearing colon polyps, removed as above." Mr. Johnson visited Dr. Maguire again on September 29, 2015. Her notes from this visit state he tested positive for Hepatitis C, his ultrasound was negative, and "he was not entirely surprised, stating that about 10 years ago he was told he might have Hepatitis C, but he could not afford follow-up testing." Dr. Maguire noted he may require an EGD if his liver work-up revealed cirrhosis. She further noted that he agreed to HIV testing, further Hepatitis C testing, and a referral to a GI doctor for a follow-up visit.
*965 Mr. Johnson was back in Louisiana on December 23, 2015, and visited the emergency room. He complained of abdominal pain and stated, "I'm cramping all over my whole stomach." The emergency room notes state he began experiencing constant, "crampy," dull pain about three hours prior to arriving.
On July 16, 2015, Mr. Johnson filed a complaint against Dr. Bhandari for medical malpractice, complaining of delayed treatment and failure to treat. He states in his complaint that he was referred to Dr. Bhandari in April 2015 and was not seen until May 27, 2015. The remainder of the complaint states the following:
Dr. Bhandari informed me that my liver was "messed up." He stated that the only way to determine the condition my Liver is by biopsies. Dr. Bhandari did not and has not ordered biopsies test for my Liver. I asked Dr. Bhandari about medication for Hep C virus and was told that his Nurse Bridgett was in charge of ordering the medication for Hep C treatment. This was June 2, 2015. Dr. Bhandari informed me that approval for the Hep C meds would take 6 weeks to 120 days for approval. I contacted my insurance carrier today for the length of time to approve medication and was informed that once the doctor orders the meds it only take 3 to 8 days before delivery.
As of today July 16, 2015 and Dr. Bhandari or his staff Bridgett has not contact my insurance carrier Blue Cross Blue Shield to order the necessary treatment medication for my liver. I contact Dr. Bhandari office to ask the status of my order and was told it takes a lot of paperwork to order the meds in which my insurance says [is] not true. I was refused permission to speak with staffer Bridgett about the delay for receiving my meds and was threaten with Police was asking to speak to her and for asking her full name. I asked to see Dr. Bhandari and was rudely told the earliest to speak with Dr. Bhandari or Staffer Bridgett is August 10, 2015.
As result of the delay my Liver is paining and stomach is bloated. I have made an appointment to be treated by another GI doctor. Dr. Bhandari seems to be angry because I did not have a Colonoscopy done. My condition [has] worsen causing pain and suffering due to "No Treatment" by Dr. Bhandari. In short, Dr. Bhandari has done nothing to treat my Liver and misrepresented the procedure to obtain the necessary medications from Blue Cross needed to treat.
The medical review panel issued its opinion and written reasons on July 27, 2017. The panel determined that the evidence presented did not support the conclusion that Dr. Bhandari failed to meet the applicable standard of care. The panel found that the Hepatitis C disease began in 2008 and no treatment was sought for seven years. Evidence presented to the panel showed Dr. Raines recommended a liver biopsy in 2013, which was refused. The panel confirmed that Mr. Johnson's initial blood work from 2015 and ultrasound suggested cirrhosis. It stated the evidence at the time indicated possible cirrhosis, which was an appropriate diagnosis. The panel stated, "As to the HEP C, the viral count pointed to 8 weeks of treatment. However, if a patient has cirrhosis, then 12 weeks is the recommendation. Dr. Bhandari recommended additional testing, which was not pursued by Mr. Johnson."
The panel also stated Mr. Johnson's insurance company would not approve medications for Hepatitis C if the patient tests positive for marijuana or alcohol. The panel noted that Mr. Johnson tested positive for marijuana. The panel also noted that it *966 takes time to gather lab information and values to determine whether the medication treatment was appropriate. The panel stated that the fibroscan Mr. Johnson received in Wisconsin was not available in Louisiana at the time of his treatment. The fibroscan is a diagnostic tool that was used to test Mr. Johnson for cirrhosis. The panel noted that the fibroscan showed a milder disease, stage 2. It stated that while he was treated for Hepatitis C, stage 2 in Wisconsin, the stage 2 disease was routinely denied therapy by insurers in Louisiana in 2015.
Mr. Johnson filed his petition for damages in district court on August 31, 2017, claiming Dr. Bhandari's negligence caused pain, suffering, mental anguish, loss of enjoyment of life, loss of income, depression, and fear of the unknown.
Mr. Johnson deposed Dr. Bhandari on February 28, 2018. Dr. Bhandari stated that Mr. Johnson was not his first patient with Hepatitis C and previous patients had been denied medication because of a positive drug and alcohol screen. He stated that although there was a drug available to treat Hepatitis C, he did not submit the paperwork because he could not "tick [the] boxes" required by the insurer. He explained that had he submitted the paperwork with a positive marijuana screen, insurance would have denied the medication, and Mr. Johnson would have had to wait six months to try again. He stated that he was trying to avoid the six-month wait by simply submitting the request once Mr. Johnson had a clean drug screen.
Dr. Bhandari filed a motion for summary judgment on April 3, 2018. The hearing on the motion was set for June 19, 2018. On June 8, 2018, Mr. Johnson, through an attorney, filed a motion to continue and opposition to the motion for summary judgment. A hearing on the motions was held August 13, 2018. Mr. Johnson appeared in proper person at the hearing. Counsel who filed the motion to continue and opposition was not present.
At the hearing on the motions, the trial court stated, "You have had this condition apparently since 2008 and for a long time... And now you've come up with wanting a motion for continuance so you can find some more evidence of some more... doctors and so forth. I'm going to deny your motion for continuance." Mr. Johnson disagreed that this timeline began in 2008 because he did not have any symptoms (the pain) until 2015. The trial court also stated that Mr. Johnson offered no medical expert testimony and based on the medical review panel opinion, granted Dr. Bhandari's motion for summary judgment. The trial court dismissed the matter in its entirety with full prejudice. Mr. Johnson now appeals that decision.
ARGUMENTS
Denial of Motion for Continuance
In his first assignment of error, Mr. Johnson argues the trial court abused its discretion in denying his motion for continuance. He argues good cause for the continuance was evident because he recently retained an attorney, who needed time to become familiar with the case. Dr. Bhandari argues that the trial court did not abuse its discretion because Mr. Johnson initiated his complaint three years prior to the dismissal of his claim; his alleged counsel never appeared in the record except to file the motion to continue and opposition to the motion for summary judgment; he was able to conduct discovery by deposing Dr. Bhandari; and, he had a sufficient opportunity to obtain a medical expert.
A continuance may be granted in any case if there is good ground therefor. La. C.C.P. art. 1601. It is a well-established *967 rule that the trial judge has wide discretion in acting upon a motion for continuance. Howard v. Lee , 50,366 (La. App. 2 Cir. 1/13/16), 185 So.3d 144. A denial of a motion for continuance will not be disturbed on appeal absent a showing of an abuse of discretion by the trial court. Davis v. European Motors , 51,522 (La. App. 2 Cir. 8/9/17), 243 So.3d 1100. An abuse of discretion occurs when such discretion is exercised in a way that deprives a litigant of his day in court. Howard v. Lee, supra . The trial court must consider the particular facts in each case in deciding whether to grant or deny a discretionary continuance. Some factors to consider are diligence, good faith, and reasonable grounds. Id.
In the case before us, we do not find that the trial judge abused his discretion. Mr. Johnson filed his original complaint and request for a medical review panel on July 16, 2015. Two years after his initial complaint, in August of 2017, he filed his petition for damages in district court. Ten months later, in June of 2018, Mr. Johnson filed, through counsel, a motion to continue. He requested the continuance because his newly retained attorney needed time to get familiar with his case. This is the only appearance of his retained attorney in the record. Up to this point, Mr. Johnson represented himself pro se . Mr. Johnson's counsel has withdrawn from the case and he has represented himself in this appeal.
We agree with the trial court that Mr. Johnson has had "a long time" to gather evidence, find a medical expert, and retain legal counsel. Mr. Johnson had the opportunity to gather evidence and even deposed Dr. Bhandari. Under these circumstances, we find the trial court did not abuse its discretion in denying Mr. Johnson's motion to continue. This assignment lacks merit.
Standard of Care
Mr. Johnson's second and third assignments of error will be discussed together. His second assignment of error is that the trial court erred in granting Dr. Bhandari's motion for summary judgment. He argues that he provided expert testimony through Dr. Bhandari's deposition, which he argues established that Dr. Bhandari breached the applicable standard of care. Dr. Bhandari counters by arguing Mr. Johnson failed to make a showing sufficient to establish the claim of breach of duty. He states that Mr. Johnson had the burden of proving the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the State of Louisiana and actively practicing in a similar community and under similar circumstances.
Finally, Mr. Johnson argues the trial court failed to consider evidence that Dr. Bhandari misdiagnosed the cirrhosis, which caused him harm. He asserts that Dr. Bhandari stated in his deposition that a biopsy is required to confirm cirrhosis. Mr. Johnson points out that Dr. Bhandari did not order a biopsy. He states, "Dr. Bhandari's actions and inactions were clearly contrary to proper and appropriate treatment and care for HEP C virus, thus constituted negligence, medical malpractice for delay/failure to eradicate the HEP C virus as evidence by Wisconsin doctors' services that eradicated the serious HEP C virus." Dr. Bhandari responded with the same arguments as above, that Mr. Johnson did not make a sufficient showing as to the applicable standard of care.
A de novo standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court must use the same criteria that governed the trial court's determination of whether summary judgment was *968 appropriate. Bank of New York Mellon v. Smith , 15-0530 (La. 10/14/15), 180 So.3d 1238 ; Hoston v. Richland Par. Hosp. Serv. Dist. 1-B , 51,362 (La. App. 2 Cir. 4/5/17), 218 So. 3d 236, writ denied , 2017-0743 (La. 9/15/17), 225 So.3d 486.
In a medical malpractice action, the plaintiff has the burden of proving: (1) the applicable standard of care, (2) that the standard of care was breached, and (3) that as a proximate result of the breach, the plaintiff sustained injuries that would not otherwise have been incurred. La. R.S. 9:2794(A) ; Johnson v. Tucker , 51,723 (La. App. 2 Cir. 11/15/17), 243 So.3d 1237, writs denied , 2017-2075 (La. 2/9/18), 236 So.3d 1262, and 2017-2073 (La. 2/9/18), 236 So.3d 1266. Physicians' actions are not to be evaluated on the basis of hindsight or in light of subsequent events. Richardson v. Cotter, 51,637 (La. App. 2 Cir. 9/27/17), 245 So.3d 136.
Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Richardson v. Cotter , supra . Examples of an "obviously careless act" not requiring expert testimony include "fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body." Id. ; Pfiffner v. Correa , 94-0924 (La. 10/17/94), 643 So.2d 1228.
Although Mr. Johnson argues this case falls under the "obvious exception" because doctors in Wisconsin were able to do what he alleges Dr. Bhandari failed to do, we disagree. This is not an obvious, careless act like leaving medical instruments inside a surgery patient or physically injuring the patient during an examination. In addition, we cannot evaluate Dr. Bhandari's actions based on subsequent events in another state six months later.
Mr. Johnson argues Dr. Bhandari was his expert because Dr. Bhandari stated in his deposition that a biopsy is required to confirm cirrhosis, but a biopsy was not performed. In discussing the biopsy, Mr. Johnson and Dr. Bhandari had the following exchange:
Q So you didn't need to take a biopsy for the cirrhosis ?
A No, because I had confirmation based on this test, which has a ninety-five percent specificity for cirrhosis, and I had an ultrasound, which I know you have a copy of, shows what we call hepatofugal blood flow. That means the blood flow in the portal vein was going backward. And those are all very sensitive for cirrhosis of the liver.
Q Okay.
A And the cause of your cirrhosis, I had evidence of that. It was likely Hepatitis C. So there was no need for me to further diagnose cirrhosis.
Q Okay.
A The only thing I needed, you know, we have to meet the check boxes that the insurance company wants for approval for the medicine.
Dr. Bhandari's deposition testimony provided in the record states a liver biopsy is one test that can be performed to determine if a person has cirrhosis, but did not state that a biopsy is required to confirm cirrhosis. Mr. Johnson did not present any independent expert testimony regarding the applicable standard of care and Dr. Bhandari's breach of that standard. The only testimony Mr. Johnson relied on was Dr. Bhandari's deposition. Without an independent expert and under these circumstances, the trial court's granting of the *969 summary judgment was appropriate. This assignment lacks merit.
CONCLUSION
For the foregoing reasons, the trial court's granting of Dr. Bhandari's motion for summary judgment and dismissal of Mr. Johnson's claim is affirmed. Costs associated with this appeal are assessed to Mr. Johnson.[1]
AFFIRMED.
APPLICATION FOR REHEARING
Before Felicia Toney Williams, Daniel Milton Moore III, Shonda D. Stone, Jeff Cox - Writing, and Jay Bowen McCallum, JJ.
Rehearing denied.

La. C.C.P. art. 5188 allows costs to be assessed against an unsuccessful party who has been allowed to litigate without the payment of costs.